## ARKANSAS MOTOR COACHES, Limited, Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14530.

United States Court of Appeals
Eighth Circuit.

July 14, 1952.

---

Wentworth T. Durant, Dallas, Tex. (Larry Taylor, Jr. and Callahan & Durant, Dallas, Tex., on the brief), for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Virginia H. Adams, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This is a petition to review a decision of the Tax Court of the United States dismissing for lack of jurisdiction petitioner's petition for redetermination of excess profit taxes for the year 1942 under the provisions of Section 722 of the Internal Revenue Code, 26 U.S.C.A. § 722. Petitioner is an Arkansas Corporation engaged in the transportation of passengers and baggage in interstate commerce. For the calendar year 1942 it filed with the Collector of Internal Revenue at Little Rock, Arkansas, its tax return and on September 2, 1942 it filed its claim for relief under Section 722(b) (4) of the Internal Revenue Code, contending that its excess profit tax as computed was excessive and discriminatory because its average base period net income was an inadequate standard of normal earnings. It sought a refund in the sum of $68,201.22. The Commissioner under date November 7, 1950, allowed petitioner's claim to the extent of $5,658.56 and disallowed the balance of the claim and on said date notified petitioner by registered mail.

Petitioner was entitled to ninety days after the date of mailing of the Commissioner's notice in which to file a petition for review with The Tax Court of the United States and on January 30, 1951 at 2:00 p. m., the eighty-fourth day after the mailing of the Commissioner's notice, it deposited its petition for review in the United States Post Office at Dallas, Texas, directed to be sent by air mail. The package was securely wrapped, properly addressed to the Clerk of the United States Tax Court at Washington, D. C., and the air mail postage fully paid as indicated by postage stamps affixed thereto. In the ordinary course of the United States mails the package would have been received in Washington, D. C. on January 31, 1951. Sometime after being mailed at Dallas, Texas, the words "Received in bad condition at Washington, D. C." were stamped on the package in two places. The Tax Court docket contains the entry, "1951, Feb. 6—Petition received and filed. Taxpayer filed." February 6 was the ninety-first day following the mailing of the Commissioner's notice to petitioner.

Respondent moved to dismiss the petition on the ground that it was filed out of time, which motion was granted. Petitioner seeks a review of the final order of the court dismissing its petition for lack of jurisdiction.

In seeking reversal petitioner contends that: (1) through no fault of its own petitioner finds itself in an unconscionable position, particularly since the merits of petitioner's tax liability can only be heard by the Tax Court under Section 722(c) of the Internal Revenue Code; (2) assuming arguendo that the petition was not received and filed until the ninety-first day the Tax Court erred in not taking jurisdiction of the petition for redetermination because

pertinent equitable circumstances in favor of petitioner tolled the running of the statutory filing period; (3) the Tax Court erred in finding and holding that the petition for redetermination was filed and received on February 6, 1951. The docket entry dated February 6, 1951, standing alone, is not evidence of actual receipt; the presumption of receipt in the course of the mails was not rebutted by respondent.

■ The only remedy which was open to petitioner was that attempted to be pursued by it. In other words, it could not have paid the tax under protest and then brought suit to recover. Section 722, Internal Revenue Code; George Kemp Real Estate Co. v. Commissioner, 2 Cir., 182 F.2d 847; Colonial Amusement Co. v. Commissioner, 3 Cir., 173 F.2d 568. If, therefore, the order of dismissal is sustained, the petitioner will have been deprived of its day in court. Judge Kern, before whom the motion to dismiss was heard, was apparently impressed with the good faith efforts of petitioner to have its day in court for during the discussion he said: "The equities are so definite, the fact that this petition was mailed in plenty of time to get to Washington in the ordinary course of the mails, and it was through no fault of yours that it was received in a bad condition and delayed and did not get to us until—what was it, the 91st day? It is a painful proposition." If equities may be invoked they speak very strongly in favor of petitioner and it is repugnant to our system of jurisprudence that any person shall be deprived of his "day in court." In this frame of mind we turn to a consideration of the facts and applicable law.

■ Acting in good faith and with due diligence petitioner entrusted its petition to the United States mails for transportation from Dallas, Texas, to Washington, D. C., in ample time so that it could be filed and served within the ninety days from the mailing of the notice of rejection of its claim by the Commissioner. It used the same agency for transmitting its petition as the Commissioner had used in transmitting his notice. Where, as in this case, matter is transmitted by the United States mails,

properly addressed and postage fully prepaid, there is a strong presumption that it will be received by the addressee in the ordinary course of the mails. Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 11 S.Ct. 691, 35 L.Ed. 332; Crude Oil Corp. v. Commissioner, 10 Cir., 161 F.2d 809, 810. While the presumption is a rebuttable one it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption. In Crude Oil Corp. v. Commissioner, supra, Judge Phillips, speaking for the court, among other things said:

"The presumption of receipt is a strong one. A finding in opposition to such inference of fact, absent evidence of nonreceipt, is against the weight of the evidence. * * *

"It follows that the proof of regular mailing, in time to reach the Collector, in due course of mail, within the statutory filing period, was sufficient to support a finding that the return was timely filed; that the presumption of correctness attached to the Commissioner's finding vanished; and that the issue was for decision wholly on the evidence."

■ In the instant case there was a strong presumption that this petition was received in Washington, D. C., on the 31st day of January, 1951. What evidence is there that it was not received by the addressee on that date? There is the docket entry. The clerk did not testify that he in fact received the petition on that date and the correctness of the docket entry is bottomed on the presumption that an officer properly performs his duty but this is simply a presumption and not the kind of evidence sufficient to overcome the strong presumption that the mail was received by the addressee on January 31, 1951, which was several days before the expiration of the ninety day period within which it should have been filed. Certainly there is no semblance of evidence to indicate that it was not received by the Post Office authorities in Washington, D. C., on January 31, 1951, because there was a presumption that it was transported in the United States

mails in due course. If, then, the addressee did not receive the notice on the 31st of January, 1951, it was either the fault of the employees of the Post Office or the employees of the Clerk's office. The government, through its Collector of Internal Revenue, is seeking to collect taxes due. The government, through the Post Office Department, is engaged in transporting mail for a consideration. The petitioner here has done everything in its power that could reasonably be done and is entirely without fault. The fault and negligence was manifestly that of government employees— whether employees in the mail service or employees in the Internal Revenue Department would seem to be immaterial. They were government employees and we think the government should not be permitted to take advantage of the negligence or fault of its own employees to defeat this taxpayer in its efforts to have its day in court. The government in carrying the mail is not acting in its sovereign capacity and to hold in the circumstances here disclosed that the government should not be permitted to interpose as a defense the negligence of its own employees would not frustrate the purpose of the law nor thwart public policy.

A somewhat similar situation was considered by the Fifth Circuit in Arlington Corp. v. Commissioner of Internal Revenue, 183 F.2d 448, 450. In that case the Commissioner had mailed a notice of deficiency under the provisions of Section 272(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 272(a) (1), to a misnamed corporate officer at his home address. The court dismissed taxpayer's petition as untimely. In reversing this holding the court, among other things, said:

"In this case petitioner stands charged with fraud, and has been penalized in back taxes and penalties by a summary assessment in the aggregate of over a third of a million dollars without ever being heard. Its petition arrived and was filed with the Tax Court on the ninety-first day after the mailing of the statutory notice by the Commissioner, and only a few hours after the time for answer is supposed to have expired. * * * we hold that the

agents of the Commissioner were negligent in failing to ascertain by a reasonable effort the correct and 'last known address' of petitioner, and that their improper addressing of the deficiency notice caused a delay in its delivery of at least one day which should be credited to petitioner so as to give the Tax Court jurisdiction over its petition."

Here, as we have already observed, the delay was caused by negligence either of the employees of the Post Office Department or the employees of the Internal Revenue office. In Eppler v. Commissioner of Internal Revenue, 7 Cir., 188 F.2d 95, 98, the Commissioner's deficiency notice was mailed to an address where the taxpayer had formerly lived. After being returned it was re-mailed to an address where it was received. The taxpayer then filed a petition for redetermination within ninety days thereafter but not within ninety days from the first mailing. In the course of the opinion it is said:

"But the taxpayer insists, and we think with justification, that by mailing out the notice of deficiency the second time by registered mail the taxpayer was given no notice of the first mailing and that he was therefore misled into believing that he had ninety days from the second mailing within which to file his appeal. The Commissioner should not be permitted to defeat the purpose of this remedial statute by so misleading the taxpayer."

In Dilks v. Blair, 7 Cir., 23 F.2d 831, 832, the Commissioner's notice of deficiency was mailed to taxpayer at a New York address rather than a later Chicago address of which the Commissioner had no notice. Calculating the time from the mailing of the Commissioner's notice, the Tax Court held taxpayer's petition to be one day late. In reversing the case the Court of Appeals held that the delay caused by misdirection of the notice should be credited to the taxpayer. In the course of the opinion it is said:

"Assessment and collection of a tax upon a mere mailing of notice of it to the taxpayer is at best drastic and summary, though perhaps necessary, and

the least the assessing officer can do to protect the taxpayer is to send the notice to such address as will be most likely to reach him so far as the proceedings may disclose such address. * * *

"* * * Assuming that ultimately the taxpayer received it, it would surely be unfair to cut off his right to the appeal 60 days after such deposit at Washington for mailing. The statute would not be transgressed, but, on the contrary, its remedial purpose would be furthered, by considering in such case the notice to have been mailed at a time and place when and where, on its return journey toward the taxpayer's address, it reached a point substantially the same distance from him as is Washington."

■ In the instant case petitioner meticulously followed the sanctioned procedure and was guilty of no negligence. If its petition was not in fact received by the Clerk of the Tax Court on January 31, 1951, well within the ninety day limitation provided by statute, it was because of the negligence of government employees for which petitioner should not be held responsible nor penalized. We are of the view that the delay caused by the negligence of government employees should be deducted from the date when the petition was actually filed and the court should direct the clerk to file the petition as of date January 31, 1951, so that that will have been done which ought to have been done, and assume jurisdiction of the case.

The order appealed from is therefore vacated and the cause remanded for further proceedings consistent herewith.

JOHNSEN, Circuit Judge (concurring in part).

From internal stoppage in the official machinery constituted to provide a suitor with his day in court, the courts usually have found a way to leave a litigant in the same situation as if that machinery had normally operated. In most instances this has been accomplished by treating the result which normal operation would have produced as having constructively occurred. But it is to be noted that this constructive concept has been limited in application to operational failures occasioned by official fault or shortcoming in the constituted machinery and does not embrace the effect of the play of extraneous forces or collateral incidents.

I do not believe that the Post Office Department can be regarded as part of the constituted machinery for making resort to the Tax Court. Neither the statutes, 26 U.S.C.A. Internal Revenue Code, §§ 272(a)(1), 732, nor the rules of the Tax Court purport to constitute a use of the mails as any part of the official channel for filing a petition for redetermination in that court. In this situation, I am unable to view a litigant's use of the mails for this purpose as being any different in its nature or consequence than would be his use of express service, freight service, messenger service, personal transporting, or any other means, in the transmittal of his petition to the Tax Court for filing.

Besides this, the doctrine that a taxpayer is entitled to be relieved of any risk to his day in court from fault or negligence on the part of employees of the Post Office Department, where he has chosen to use the mails to make filing of a petition in the Tax Court, is to me fraught with implications, which I am unable here to take the time to attempt to project. To give only one readily occurring example—if delay in the filing of a petition for redetermination, occasioned by fault or negligence of the Post Office Department in the handling of such a petition in the mails, cannot affect the jurisdiction of the Tax Court, then logically litigants against the Government in other courts—the Supreme Court, the Courts of Appeals, the District Court, etc. —would seem necessarily to be entitled to the same kind of jurisdictional protection in those courts.

I am of the opinion therefore that, if relief can at all be granted in the present situation, it can only be done on the basis of some internal failure of operation having occurred in the machinery of the Tax Court, set up to make possible the filing of

a petition for redetermination within the object of the statute. In other words, it must be possible for us to find, from direct testimony or on circumstances, that there had been some breakdown in the processes of that machinery, which was responsible for the taxpayer's petition not having been formally filed and docketed until February 6, 1951, whereas, if the operation of the machinery had been normal, such filing and docketing would have previously occurred and should therefore be constructively regarded as having been so done. I feel, however, that the record before us does warrant such a finding, and it is on this basis that I concur in the reversal of the Tax Court's order dismissing the taxpayer's petition.

The Tax Court treated the filing stamp and docket entry of the Clerk's office as conclusive that the petition of the taxpayer had not in any way come into the hands of the Clerk's office until February 6, 1951. But, as the majority opinion points out, there was no testimony that the petition was in fact first received on that date, and judicial decisions in related situations make clear that the formal filing and docketing of a petition in the Tax Court will not necessarily represent the date of legal receiving, if the receipt is one which does not automatically channelize itself into the court's mailing room routine processes. See e. g. Palcar Real Estate Co. v. Commissioner, 8 Cir., 131 F.2d 210, 213, and McCord v. Commissioner, 74 App.D.C. 369, 123 F.2d 164.

It seems to me a reasonable inference from the circumstances of the record that the petition here left Dallas on January 30th and came into the Post Office at Washington, on January 31st. Apparently it was taken out of the channel of immediate regular delivery in order to permit it to be stamped with the notation "received in bad condition." But it would in usual course have gone back promptly into the channel of regular delivery, unless its condition was such that the Post Office Department would not at all undertake to make delivery of it except upon personal call or pick-up by the addressee. In the latter event, notice would, of course, go out to the addressee. The consuming of 7 days in either of these processes is so unusual as to give rise to no conviction of likelihood or probability of it having occurred. It therefore seems a reasonable inference (1) that the petition was taken to the Tax Court before February 6th and that, because of its condition or for other reason, it was not made subject to the routine handling of the mailing room, or (2) that notice was sent out by the Post Office, which made possible the picking-up of the petition before February 6th, but that, because of the departure from regular routine involved, this was not done by the mailing room until February 6th.

The first situation would of course plainly be one in which there had been a receiving and so a right to have a filing made before February 6th. And to me, the second situation also should be regarded as one of legal receiving before February 6th, within the doctrine of constructive operation of official machinery referred to above. I do not mean to imply that the mailing room necessarily had the official responsibility of calling for or picking up petitions, for that question does not here require consideration. But I entertain no doubt that, if it at all engaged in the practice as part of its processes, it owed the duty of doing so with proper official diligence and not merely at its own convenience.

And so I think that the Tax Court should have held that there had been such a receiving of the taxpayer's petition within 90 days as to provide the court with jurisdiction to make a redetermination of the assessed taxes. Where the right to a day in court is at stake, the judicial approach should be one of attempt to accord the right, if this can legitimately and reasonably be done, and not one of attempt to deny it through unnecessary resolution, unless such a denial is either legally or equitably compelled. I believe that the present situation, on the basis which I have stated, is one where the right can legitimately and reasonably be accorded and where certainly there is no reason equitably to look for a way to deny it.