ESTATE OF Leonard A. WOOD, Deceased, J.M. Loonan, Personal Representative, Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 89–2366.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1990.

Decided July 26, 1990.

Rehearing and Rehearing En Banc Denied Oct. 10, 1990.

**1156**

John A. Dudeck, Washington, D.C., for appellant.

Charles K. Frundt, Blue Earth, Minn., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge and HANSON,* District Judge.

BEAM, Circuit Judge.

The Commissioner of Internal Revenue appeals from a judgment entered by the United States Tax Court in favor of the estate of Leonard A. Wood. The Commissioner had assessed a deficiency of $38,636.54 in the estate's 1981 federal estate

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern/Southern Districts of Iowa, sitting by designation.

tax payment due to an untimely election of special use valuation. *See* 26 U.S.C. § 2032A (1988). The tax court, however, found that the election was timely because of the "timely mailing as timely filing" provision of the Internal Revenue Code. *See* 26 U.S.C. § 7502 (1988).[1] We affirm.

## I. BACKGROUND

Leonard A. Wood died a resident of Easton, Minnesota, on June 21, 1981, and left a gross estate consisting primarily of 160 acres of farmland. The estate elected special use valuation under section 2032A and valued the property at $173,334. The Commissioner, however, alleged that the Internal Revenue Service did not receive the estate return. Consequently, the IRS found that special use valuation was not elected in a timely way. The Commissioner valued the farmland at its fair market value of $321,840, and assessed a deficiency of $38,636.54. In its petition for review by the tax court, the estate argued that the special use valuation election was timely in accordance with section 7502.

The estate called two witnesses at trial, the first being the personal representative of the estate, James M. Loonan, a life-long friend of Wood, and the president of the State Bank of Easton. In addition to serving as president of the bank, Loonan also practices law in Easton, a town of 248 people, although he does so in association with a law firm from Blue Earth. Loonan testified that his law practice consists mostly of probate and real property work, and that he has acted as either a personal representative or the attorney for an estate many times.

Loonan himself prepared the federal estate tax return, due March 21, 1982, nine months from the date of death. March 21 fell on Sunday, so the return was due on Monday. Loonan testified that the law firm in Blue Earth normally mails completed estate returns, but that the Wood return was late, so he mailed it himself, from the

1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as in effect at the date of decedent's death.

Easton post office. The Easton post office is a one-room facility, staffed by Marvel Staloch, its postmistress, whom Loonan has known since high school. Loonan testified that he walked next door from the bank to the post office where he specifically mentioned to Staloch that the envelope [2] he was mailing contained the federal estate tax return for Wood's estate. He also told Staloch that the return was due on Monday, so that it had to be postmarked that day, Friday, March 19. Loonan had affixed a pre-printed address for the IRS to the envelope, and he watched Staloch weigh the envelope, put postage on it, cancel it, and put it into the appropriate bundle of outgoing mail.

The estate also called Marvel Staloch. At the time of trial, Staloch had been at the Easton post office for eighteen years, and she testified that she remembers the Friday afternoon when Loonan came in with the Wood estate tax return. Staloch was certain that it was a Friday afternoon,[3] because she does not work on Saturday, and she remembers the conversation with Loonan. Staloch testified that she put postage on the envelope and that she hand-cancelled it because she does not have a cancelling machine. In essence, then, Staloch herself affixed, by hand, the postmark, dated March 19, 1982, to the envelope. She put the envelope in the appropriate mail pouch, and is certain that the pouch left Easton for she has not since found it in the post office. Staloch also testified that she had received no complaints from residents of Easton about lost mail.

Although non-receipt is alleged, the Commissioner actually adduced no evidence be-fore the tax court that the IRS did not receive the return.

On these facts, the tax court found that the estate had established that the envelope was postmarked within the time for filing, and that the requirements of section 7502(a)(2) were satisfied. Section 7502, entitled "Timely mailing treated as timely filing and paying," provides that, upon proof of postmark, the date of the postmark shall be deemed the date of delivery. Given the testimony of Staloch, the tax court found proof of postmark, and thus that a presumption of delivery applied within the terms of section 7502. Accordingly, the tax court held that the federal estate tax return was presumed to have been delivered to the IRS on March 19, 1982, subject to rebuttal by the Commissioner. Since the Commissioner presented no evidence that the IRS did not receive the return, the tax court concluded that the return was, under the law, delivered to the IRS on March 19, 1982.

## II. DISCUSSION

The tax court credited the evidence and found that Staloch affixed proper postage to the accurately addressed envelope containing the federal estate tax return, hand-cancelled the stamps—thus affixing a postmark dated March 19, 1982—and placed the envelope in the mail pouch. *Estate of Wood v. Commissioner*, 92 T.C. 793, 794 (1989). The tax court also stated: "[The Commissioner] called no witnesses and offered no records to show that the return was not received by him. ... [The Commissioner's] claim that he did not receive the return is, in short, not supported in this record by any positive evidence." *Id.* at

---

**2.** Although not relevant to this appeal (given the tax court's findings of fact), the record indicates that Loonan also mailed on March 19 a state tax return to the Minnesota Commissioner of Revenue in St. Paul. Loonan was asked on cross-examination whether he was aware that the state return mailed on that date had never been received in St. Paul. He replied: "That is what I understand." Trial Transcript at 44. The parties stipulated that a copy of the return was received by the Minnesota Commissioner of Revenue at a later date.

**3.** At trial, counsel for the Commissioner referred Staloch to her affidavit submitted to the court, which indicated that Loonan came into the post office to mail the return on March 21, 1982, in fact, a Sunday. Trial Transcript at 78. Staloch explained that while, at the time she executed the affidavit she was uncertain of the date she had talked to Loonan, she is certain that Loonan came in on a Friday afternoon, which could only have been March 19. *Id.* at 79. The tax court specifically found that the return was postmarked March 19, 1982, and the Commissioner does not challenge this finding.

800. As indicated, the Commissioner does not challenge these findings of fact. Rather, the Commissioner appeals the tax court's construction of section 7502. The section, the Commissioner argues, does not allow the date of the postmark to constitute the date of delivery except when the taxpayer establishes actual, belated, delivery or when the return is forwarded by registered or certified mail which act provides prima facie evidence of delivery. Specifically, the Commissioner asserts that no presumption of delivery can operate under section 7502(a). Thus, we review the tax court's interpretation.

Section 7502 was enacted in 1954. Prior to section 7502, filing by mail was subject to the vagaries of postal delivery, which delivery varies from place to place and from season to season. *See Miller v. United States*, 784 F.2d 728, 730 (6th Cir.1986); *Sylvan v. Commissioner*, 65 T.C. 548, 551 (1975). However, the courts have long applied a common law presumption of delivery upon proof of mailing to alleviate hardship to the taxpayer. *See, e.g., Arkansas Motor Coaches v. Commissioner*, 198 F.2d 189, 191 (8th Cir.1952). The effect of section 7502 on this presumption is unclear. In any case, the general rule posited by the statute, found in section 7502(a)(1),[4] is that the date of postmark will be deemed the date of delivery. As earlier noted, if a document is postmarked within the prescribed time for filing, but received late,

section 7502 provides that the document will be considered to have been timely filed. *See* section 7502(a)(1). The statute also provides, as indicated, that a showing that a document was sent by registered or certified mail shall constitute prima facie evidence that the document was delivered. Also, the date of registration is deemed to be the date of postmark. Section 7502(c).[5] Therefore, the hallmark of the section is the requirement concerning postmark.

No argument is made that section 7502 does not apply in this case. The Commissioner argues instead that the statute requires *actual* delivery under subsection (a)(1) or proof of delivery by the taxpayer under subsection (c)(1)(A).[6] That is, absent registration or certification, neither of which was done in this case, the taxpayer bears the risk of loss as to any document which the IRS *claims* not to have actually received.

■ The Commissioner relies heavily on two circuit court decisions, *Miller v. United States*, 784 F.2d 728 (6th Cir.1986), and *Deutsch v. Commissioner*, 599 F.2d 44 (2d Cir.1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980). In *Deutsch*, taxpayer's petition for review of a deficiency assessed by the Commissioner was never delivered to the tax court. *Deutsch*, 599 F.2d at 45. The taxpayer's accountant offered an affidavit that the petition was mailed within the prescribed

---

4. 26 U.S.C. § 7502(a)(1) provides:
   If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

5. 26 U.S.C. § 7502(c) provides:
   (1) Registered mail
   For purposes of this section, if any such return, claim, statement, or other document,

or payment, is sent by United States registered mail—
   (A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed, and
   (B) the date of registration shall be deemed the postmark date.

6. Presumably, subsection (a)(1) would not apply, according to the Commissioner, unless the IRS stipulated that it had received the document or payment. Under subsection (c)(1)(A), the Commissioner seems to argue for a form of "presumed" delivery if the document or payment is forwarded by the taxpayer after registration or certification. If our understanding of the Commissioner's position is correct, we believe, as we later explain, that the Commissioner misreads both subsections of section 7502.

period. *Id.* The Second Circuit held, however, that while the date of postmark could be deemed the date of delivery, such would be true only under the terms of section 7502(a)(1), which the court held to be "only applicable if the petition is actually delivered." *Id.* at 46. In *Miller*, taxpayer's claims for refund were allegedly not received by the IRS, and the court refused to consider the affidavit of taxpayer's attorney that the claims were timely mailed. *Miller*, 784 F.2d at 729. The Sixth Circuit construed section 7502 as creating two separate exceptions to the requirement of physical delivery, and held that section 7502(a), "both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period." *Id.* at 730.[7] Relying largely upon these cases, the Commissioner argues that the tax court's interpretation of section 7502, allowing a presumption of delivery to apply absent registration or certification, is an error of law. To the extent that the Sixth and Second Circuits in *Miller* and *Deutsch* hold that a presumption of delivery can *never* be used to satisfy the requirement of delivery in section 7502(a)(1), we disagree.

The tax court held that "[t]he rules of section 7502 are wholly compatible with a presumption of delivery." *Estate of Wood*, 92 T.C. at 800. We agree. The statute itself supports this interpretation.

■ The Internal Revenue Code requires actual receipt of a document or payment by the IRS in order for filing to be timely. *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1345–47 (9th Cir. 1982). However, in section 7502(a)(1), there is a presumption of receipt of the document or payment on the date of the postmark, notwithstanding its actual delivery to the agency at a later time. Section 7502(c) also provides for a presumption of receipt. Under its terms, the delivery to the agency is presumed to have occurred on the date of the postmark which, in turn, is presumed to be the date upon which the taxpayer registers or certifies the mailing.

■ In both situations, the critical element, under the statute, is the postmark. Thus, section 7502(c) is inextricably intertwined with section 7502(a)(1) because you must look from (c) to (a)(1) to ascertain the importance, if any, of the postmark date. Under the statutory scheme, the primary importance of registration or certification is that such act establishes the postmark date. The registration or certification does not conclusively establish delivery; it is, rather, "prima facie evidence" of delivery.[8]

There is no reason that a presumption of delivery should not apply against the Commissioner under section 7502. As indicated, the presumption did apply against him prior to the enactment of the statute. *See, e.g., Arkansas Motor Coaches*, 198 F.2d at 189 (presumption of delivery applied where petition for review mailed to tax court within prescribed period but received thereafter); *Crude Oil Corp. v. Commissioner*, 161 F.2d 809 (10th Cir. 1947) (presumption of delivery applied where return timely mailed by taxpayer, but never received by IRS). The presumption has also been applied against the Commissioner after the enactment of section 7502. *See, e.g., Mitchell Offset Plate Serv., Inc. v. Commissioner*, 53 T.C. 235 (1969) (presumption of delivery applied where subchapter S election forms were timely mailed but not received).

---

7. We can find nothing helpful in the legislative history about actual, physical delivery. Neither the House nor the Senate Report contains any statement that actual, physical delivery is in fact required under section 7502. Rather, both reports merely refer generally to the statutory language by noting that the section applies where documents "are received." *See* H.R.Rep. No. 1337, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4017, 4583; S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621,

5266. To the extent that we find the statutory language itself not conclusive, the legislative history is of no use.

8. Since under subsection (c) registration or certification is "prima facie evidence" of delivery, the persuasive effect of this factual showing is apparently rebuttable. However, we could find no cases in which the IRS sought to attack such proof of delivery when registration or certification was established.

The argument of the Commissioner is not that a presumption should not apply as a matter of policy,[9] but that Congress has completely displaced the common law presumption by the enactment of section 7502. The only instances in which a presumption can apply against the Commissioner, the argument goes, are explicitly and exclusively set forth in subsection (c). Several courts have interpreted section 7502 as an exclusive provision. "The exceptions by which a taxpayer may prove timely filing when mailed are exclusively and completely outlined in § 7502." *H.S. & H. Ltd. v. United States*, 18 Cl.Ct. 241, 246 (1989). *See also United States v. Cope*, 680 F.Supp. 912, 917 (W.D.Ky.1987) ("The only two exceptions to the § 7422(a) physical delivery rule are contained in § 7502."); *Miller*, 784 F.2d at 731 (citing *Deutsch*, that "section 7502 did not operate to merely create 'safe harbors' for the taxpayer, [and] that the exceptions embodied in that section [are] exclusive and complete."). Whether or not the common law presumption continues to exist generally, we simply do not agree that by the enactment of section 7502, Congress intended to foreclose application of a presumption of delivery within section 7502(a)(1) in those cases in which the postmark requirements of the section can be conclusively established, as here.

■ When interpreting a statute, we must consider the statute in light of judicial concepts existing before it (in this case, the common law presumption of delivery) was enacted. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Stillians v. Iowa*, 843 F.2d 276, 280 (8th Cir.1988) (quoting *Midlantic Nat'l Bank v. New Jer-*

*sey Dep't of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)). Thus, it is proper to consider that Congress acts with knowledge of existing law, and that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Accordingly, for section 7502 to completely displace the common law presumption of delivery, we must find some statutory or legislative indication that Congress so intended.

■ No such indication exists in the legislative history. Indeed, the legislative history does little more than refer generally to the statutory scheme in statutory language. *See* H.R.Rep. No. 1337, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4017, 4583; S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 5266. Congress did not indicate in its legislative reports that section 7502 completely displaced the common law, or that a presumption of delivery could apply only given the circumstances of subsection (c). It is worth noting that those courts which find that subsection (c) is the exclusive instance in which a presumption can apply cite no legislative history for support. *See, e.g., Miller*, 784 F.2d at 731; *Deutsch*, 599 F.2d at 46; *H.S. & H. Ltc*, 18 Cl.Ct. at 246; *Cope*, 680 F.Supp. at 918.

Nor does the statutory scheme indicate that subsection (c) should be read with such exclusivity. This is especially true when we suppose, as we must, that Congress knew of the common law presumption of delivery. Thus, as we have indicated, if Congress intended that subsection (c) was

---

**9.** The Commissioner does make a policy argument: that a presumption of delivery should not apply against the IRS because application of the presumption forces the Commissioner to prove a negative, i.e., non-receipt of a document, and given the volume of documents handled by the IRS, this burden would be staggering. *See* Brief for Appellant at 28. Given that a presumption of delivery applied against the IRS prior to the enactment of section 7502, *see* cases cited *supra*

in text, and that Congress has sanctioned the use of registration and certification as prima facie evidence of delivery, presumably subject to rebuttal, we find any such policy argument unpersuasive. Even if we agreed with the Commissioner that there are policy considerations which advise against application of the presumption against the IRS, the holding of this case is narrow enough that such considerations are entitled to little weight.

to be the exclusive instance in which a presumption of delivery could apply, we think that it would have said so. Given that Congress presumably intended that section 7502 would operate to alleviate hardship, for the benefit of the taxpayer, we think that subsection (c) is better read as a safe harbor which does not exclude application of a presumption of delivery in those cases in which the terms of the statute are otherwise met.

The cases establish that section 7502 "cannot be and was not intended to be satisfied unless a postmark date has been stamped on the 'cover.'" *Madison v. Commissioner*, 28 T.C. 1301, 1302 (1957). The emphasis on postmark is made even more clear by the cases which hold that the date of an actual postmark is controlling for purposes of the statute, and evidence that a document should have been postmarked earlier is irrelevant. *See, e.g., Feldman v. Commissioner*, 47 T.C. 329 (1966) (postmark date of November 1, 1960, one day after filing deadline, made filing untimely, even though evidence proved that document had been mailed on October 31, 1960). The tax court has also held that a document mailed prior to a filing deadline but delivered after the deadline was not timely filed where the post office failed to postmark the envelope, even though the envelope was in fact delivered. The tax court held that evidence of when the envelope should have been postmarked was inadmissible. *Rappaport v. Commissioner*, 55 T.C. 709, 711 (1971), *aff'd*, 456 F.2d 1335 (2d Cir.1972). Thus, in section 7502 Congress dealt with issues of proof, and determined that a postmark is evidence verifiable beyond any self-serving testimony of a taxpayer who claims that a document was timely mailed. A postmark is proof not only that the document was in fact mailed, but also of the date on which it was mailed. The act of mailing is not significant for purposes of the statute but placement of a postmark is. *See, e.g., Madison*, 28 T.C. at 1302–03 (argument that petition was timely filed because it was mailed prior to filing deadline held incorrect given statutory requirement of postmark); *Rappaport*, 55 T.C. at 711 ("[T]his Court has

consistently taken the position that the requirement of a postmark is essential to obtaining the benefits of section 7502(a)."). Thus, any case in which a postmark is actually established is distinguishable from either *Miller* or *Deutsch*, in which the only evidence was that of mailing, and in which no postmark was ever established.

Given this framework, we think that the proof of postmark in this case, by the testimony of Marvel Staloch, is as certain as if the document were actually received late and viewed, or as if the estate could produce a receipt for registration or certification. Therefore, the benefits of the postmark date should accrue to the estate.

## III. CONCLUSION

The estate presented the tax court with a most unusual case, and while we do not hedge our interpretation of the statute, we must note the narrowness of our holding. To obtain the benefit of section 7502, the taxpayer must offer proof of postmark—not mere evidence of mailing—as by the testimony of the postal employee who handled and stamped the document. *See, e.g., Rappaport*, 55 T.C. at 711 (evidence of mailing and of "when the envelope ... would have been postmarked in the normal course of the business of the U.S. Post Office Department is irrelevant and immaterial and therefore inadmissible."). Moreover, by the terms of the statute, only direct proof of postmark, which proof will be extraordinarily rare outside the instances specified in the statute, will satisfy the requirements of the act. And, finally, under subsection (a)(1), even direct proof of postmark raises only a presumption of delivery, which is rebuttable by the Commissioner. *See, e.g., Walden v. Commissioner*, 90 T.C. 947, 951 (1988) (presumption of delivery was overcome by the Commissioner, and tax court made a finding of fact that the return was lost by the U.S. Postal Service and never delivered to the IRS); *H.S. & H. Ltd.*, 18 Cl.Ct. at 244 (Commissioner introduced evidence of non-delivery through testimony about IRS record-keeping procedures, introduction of both the

record transcript and a "document styled Certification of Lack of Record.").

As indicated, it will be a special case in which the taxpayer will be able to prove a postmark without either the document or a receipt, thus invoking a presumption of delivery under section 7502. However, such a presumption is viable here and the judgment of the tax court is affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent. The majority determines that the timely filing requirement of I.R.C. § 7502 (1988) is satisfied by secondary evidence of a postmark. I submit that the majority's holding ignores the plain language of the statute and violates basic principles of statutory construction.

The majority concludes that direct proof of a postmark satisfies the requirements of I.R.C. § 7502(a), even where the Commissioner asserts the document was not actually received. The plain language of the statute does not support this result. I.R.C. § 7502 reads as follows:

**(a) General rule.**

**(1) Date of delivery.** If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date * * * is, *after such period or such date, delivered by United States mail* to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed *shall be deemed to be the date of delivery* or the date of payment, as the case may be.

**(2) Mailing requirements.** This subsection shall apply only if—

(A) the postmark date falls within the prescribed period or on or before the prescribed date—

(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

(ii) for making the payment (including any extension granted for making such payment), and

(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

\*　\*　\*　\*　\*　\*

**(c) Registered and certified mailing.**

**(1) Registered mail.** For purposes of this section, if any such return, claim, statement, or other document, or other payment, is sent by United States registered mail—

(A) such registration shall be prima facie evidence that the return, claim, statement, or other document *was delivered* to the agency, officer, or office to which addressed, and

(B) the date of registration shall be deemed the postmark date.

**(2) Certified mail.** The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark shall apply to certified mail.

I.R.C. § 7502(a), (c) (emphasis added).

Contrary to the majority's reasoning that the "hallmark" of these sections is the postmark, my reading of the statute is that "delivery" is the essential requirement under subsection (a) of the statute. Subdivision (a) addresses the "date of delivery," and requires that the document be "delivered by United States mail." I am unable to agree with the majority that the postmark is the controlling factor when the plain language of the statute relegates the postmark to irrelevancy if the document is not delivered. In this case, the estate's tax return was not delivered to the Commis-

sioner.[1] Therefore, the estate cannot, under the plain terms of the statute, take advantage of the timely mailing exception of section 7502(a) since that exception applies only in the case of delivery of the document. *See, e.g., Miller v. United States,* 784 F.2d 728, 729 (6th Cir.1986) (per curiam); *Deutsch v. Commissioner,* 599 F.2d 44, 46 (2d Cir.1979); *H.S. & H. Ltd. v. United States,* 18 Cl.Ct. 241, 246 (1989); *Buttke v. United States,* 13 Cl.Ct. 191, 192 (1987).[2]

The IRS has consistently interpreted the plain language of this statute to require delivery for the timely mailing exception to apply: "Section 7502 is not applicable *unless the document is delivered* by U.S. mail to the agency, officer, or office with which it is required to be filed." 26 C.F.R. § 301.7502–1(d) (1989). This court has previously accorded substantial deference to the Commissioner's interpretations of a statute. *See Yellow Freight Sys., Inc. v. United States,* 538 F.2d 790, 795–96 (8th Cir.1976); *see also City of Tucson, Ariz. v. Commissioner,* 820 F.2d 1283, 1287–88 (D.C.Cir.1987) (giving substantial deference to regulation). There is no question that the estate's return was not delivered to the IRS. Therefore, the estate cannot reasonably argue that the timely mailing constitutes timely filing. Under these circumstances, evidence of a postmark is irrelevant to the issue of delivery.[3]

The majority's interpretation also renders redundant and irrelevant subsection (c), which allows a taxpayer using reg-istered or certified mail to rely on the receipt from the mailing as prima facie evidence of delivery. This subsection creates the presumption of delivery that the majority strains to find in subsection (a). Subsection (c) offers the taxpayer who is unwilling to risk the possibility of nondelivery or lost mail a form of evidence that verifies mailing by creating a presumption of delivery. Thus, as consistently interpreted by the Commissioner, "if the document is sent by registered mail or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued * * * shall constitute prima facie evidence that the document was delivered[.]" 26 C.F.R. § 301.7502–1(d).

The majority's interpretation of subsection (a), to allow a taxpayer to create a presumption of delivery by presenting evidence of a postmark, obliterates subsection (c), and strips it of its purpose. Why would Congress provide use of certified or registered mail for a taxpayer when the presumption of delivery can be established by evidence of a single postmark? Under those circumstances, subsection (c) would become totally redundant. Established principles of statutory construction require that statutes be interpreted to give effect to all the provisions. *See, e.g., Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (statute should be interpreted so as not to render one pro-

---

1. A copy of a return purportedly sent prior to the deadline date was received by the Commissioner on October 2, 1984, 2 years and 6 months after it was due.

2. The common law rule was that delivery was required for a document to be considered filed. *See United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916). The majority recognizes that prior to the enactment of section 7502, taxpayers were "subject to the vagaries of postal delivery, which delivery varies from place to place and from season to season." Maj. op. at 1158. If the statute was enacted to address perceived inequities in *delivery,* I am at a loss to understand how the majority can conclude that the "hallmark" of the statute is the postmark.

3. To the extent that the majority relies on case law that suggests the taxpayer's evidence of a postmark creates a presumption of delivery, I agree with the dissenting judges in the Tax Court that the taxpayer must also present evidence that the document mailed would have reached the Commissioner by the necessary date, evidence the taxpayer did not present in this case. *See Arkansas Motor Coaches v. Commissioner,* 198 F.2d 189, 190 (8th Cir.1952) (taxpayer's petition would have reached destination in ordinary course of mail delivery); *Crude Oil Corp. v. Commissioner,* 161 F.2d 809, 810 (10th Cir.1947) (proof of mailing in time to reach destination by date required created presumption of delivery). Both cases, however, were decided prior to the enactment of section 7502, which, as I have noted, requires delivery for its exceptions to be effective.

vision redundant); *Beef Nebraska, Inc. v. United States,* 807 F.2d 712, 717 (8th Cir. 1986) (court should not adopt a reading of statute that renders one provision redundant). Additionally, the majority's proposed reading of the statute defeats the purpose of section 7502, to create "an easily applied objective standard." *Deutsch,* 599 F.2d at 46.

For the reasons explained, I respectfully dissent.