Michael and Valerie **MCBRADY**, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

**Civ. No. 15–3258 (RHK/LIB)**

United States District Court, D. Minnesota.

Signed March 3, 2016

Mark A. Pridgeon, Pridgeon Law Office, Edina, Minnesota, for Plaintiffs.

Hilarie E. Snyder, United States Department of Justice, Tax Division, Washington, D.C., Craig R. Baune, United States Attorney's Office, Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, United States District Judge

In this action, Plaintiffs Michael and Valerie McBrady seek a refund of allegedly overpaid income taxes.[1] The IRS moves to dismiss for lack of subject-matter jurisdiction. For the reasons that follow, its Motion will be granted.

## BACKGROUND

The McBradys jointly own ImageTrend, a Minnesota corporation that sells data-management software. (Compl. ¶¶ 6–7.) ImageTrend is a "subchapter S" corporation (*id.* ¶ 8), which means it has elected to pass its income through to its shareholders for tax purposes. *See* https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/S-Corporations (last visited Mar. 1, 2016). In other words, Image-

---

1. The federal government is the named Defendant, but the Internal Revenue Service collects taxes on behalf of the government; accordingly, the Defendant is referred to herein as "the IRS."

Trend's income is reported by the McBradys on their personal income taxes.

For tax years 2008 and 2009, the McBradys reported tax liabilities and timely paid the amounts owed. (Olson Decl. ¶¶ 3b-c, 5a-b.)[2] But the IRS later examined and revised the McBradys' tax returns, changing the years in which certain payments received by ImageTrend were reportable as income. This shifted a significant amount of the company's income from tax year 2009 to tax years 2008 and 2007. (Compl.¶¶ 10–11.) As a result, the McBradys amended their personal income tax returns to reflect the changes in ImageTrend's income. (*Id.* ¶ 12.)

Following the reexamination, the IRS assessed additional tax liability of $262,217 for 2008, along with interest and penalties (Olson Decl. ¶ 3c), and the McBradys do not dispute that they have not fully paid this amount. (Mem. in Opp'n at 14–16; *see also* Olson Decl. ¶ 4.) In addition, the IRS reduced the amount of ImageTrend's 2009 income by $614,913. (*See* Compl. ¶ 11.) As a result of this reduction, the McBradys became eligible for a refund for 2009 and for business tax credits in the amount $42,068. (*Id.* ¶ 14.) But because the McBradys were entitled to a refund, they would receive no benefit by applying the credits to the 2009 tax year, and instead they opted to carry those credits back to 2008, as permitted under the tax code. (*Id.* ¶ 14.) As a result, the McBradys commenced this action, seeking both the 2009 refund and a refund generated by the carry-back of the 2009 business credits to 2008.

The IRS now moves to dismiss, arguing the Court lacks subject-matter jurisdiction because the United States has not waived sovereign immunity. The Motion has been fully briefed and is ripe for disposition.

## ANALYSIS

 The United States enjoys sovereign immunity, meaning it cannot be sued without its consent. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Congress determines the circumstances under which a court may hear an action against the government, *see Minnesota v. United States,* 305 U.S. 382, 388–89, 59 S.Ct. 292, 83 L.Ed. 235 (1939), and it has conferred original jurisdiction upon the district courts to hear cases seeking the recovery of income taxes, *see* 28 U.S.C. § 1346(a)(1). However, certain prerequisites must be satisfied before a court may hear an action under § 1346, two of which are relevant here. First, a court may not hear a tax-refund action unless the taxpayer has fully paid his or her tax liability, the so-called "full-payment rule." *Flora v. United States,* 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Second, a court may not hear a tax-refund action unless the taxpayer has first timely filed a claim with the IRS for a refund. 26 U.S.C. § 6511(a). The IRS invokes each prerequisite here, arguing the McBradys (1) have not fully paid their 2008 tax liability and (2) did not timely file a claim for the 2009 refund. The Court agrees.

### I. The Full–Payment Rule Bars the 2008 Refund Claim

 In *Flora,* the Supreme Court held that jurisdiction is lacking over a tax-refund action unless the taxpayer has fully paid his or her tax liability for the year in

---

**2.** The Court may consider the Declaration of IRS employee Deborah Olson because the IRS has mounted a "factual attack" to subject-matter jurisdiction. *See Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993) (explaining the difference between facial and factual attacks). In evaluating such an attack, the Court may look beyond the Complaint and "receive competent evidence, such as affidavits, deposition testimony, and the like." *Id.*

which a refund is requested. 362 U.S. at 177, 80 S.Ct. 630; *see also Jibunor v. IRS,* Civ. No. 93–578, 1994 WL 317637, at *2 (D.Minn. Mar. 7, 1994) (Kyle, J.) ("The payment of the full amount [is a] prerequisite[ ] to jurisdiction under 28 U.S.C. § 1346(a)(1)."). Here, as noted above, the record reveals the McBradys have not fully paid the IRS's tax assessment for 2008 (Olson Decl. ¶ 4), and the McBradys do not dispute this assertion (Mem. in Opp'n at 1416). The McBradys' outstanding 2008 tax liability deprives the Court of subject-matter jurisdiction to hear their refund claim for that year.

The McBradys ask the Court to rely on the full payment of their *2009* tax liability as satisfaction of the full-payment rule for *2008,* since it was tax credits for 2009 that created the 2008 refund. In support, they analogize the full-payment rule to an IRS rule extending the filing deadline for refund claims when tax credits are carried back to previous tax years. (Mem. in Opp'n at 15.) Yet, the McBradys cite no authority to support this approach, and the Court is not aware of any. *Contra Koss v. United States,* 69 F.3d 705, 708 (3d Cir. 1995) (rejecting similar argument to the one the McBradys make here); *Wasson v. United States,* 100 Fed.Cl. 798, 801 (Fed. Cl.2011) ("[T]axpayers are required to pay their taxes in full for the year they are claiming a net operating loss carryback prior to initiating suit."). Simply put, *Flora* is clear and compels the conclusion that the Court lacks jurisdiction over the McBradys' 2008 refund claim.

## II. The McBradys Failed to Timely File Their 2009 Refund Claim

As noted above, timely filing a refund request is a prerequisite to the Court's jurisdiction over a refund claim. 26 U.S.C. § 7422(a); *United States v. Dalm,* 494 U.S. 596, 601–02, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) ("[U]nless a claim for refund of a tax has been filed within the time limits imposed [under federal law], a suit for refund ... may not be maintained in any court."). Such a request must be filed within three years after the claimant's tax return was filed or two years after the claimant paid his or her tax liability, whichever is later. 26 U.S.C. § 6511(a). The McBradys filed their 2009 tax return on September 16, 2010, and they do not dispute that they were required to file a refund claim on or before September 16, 2013, three years later. Nor do they dispute that the IRS did not receive such a claim by the deadline. While this would appear to be the end of the McBradys' claim, things are not quite that simple.

The McBradys assert that they *mailed* a refund claim to the IRS on September 12, 2013, even though it was never received, and they claim this mailing is sufficient to show timely filing. Whether that is true requires some discussion of the "mailbox rule." As noted above, § 7422 provides that no action for a refund may be maintained in any court "until a claim for refund ... has been duly filed with" the IRS. 26 U.S.C. § 7422(a)(1). Although Congress did not define the term "filed" in the statute, in 1916 the Supreme Court determined that filing "is not complete until the document is delivered and received." *United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916). This "physical delivery" rule became the default requirement for tax-refund claims. *See Miller v. United States,* 784 F.2d 728, 730 (6th Cir.1986) (*per curiam* ).

Over time, however, courts began to note that the physical-delivery rule sometimes leads to harsh outcomes. Seeking a more "equitable" alternative, judges began to apply the common-law "mailbox rule" to tax-refund claims. The mailbox rule allows courts to consider evidence of timely

*mailing* to raise a presumption of timely *filing*. *Id.* (citing *In re Nimz Transp., Inc.*, 505 F.2d 177, 179 (7th Cir.1974)). Congress eventually incorporated a modified version of the mailbox rule into § 7502 of the tax code, 26 U.S.C. § 7502. Under that statute, a taxpayer can raise a presumption of timely filing by a mailing in one of two ways. First, he can proffer evidence of a timely United States Postal Service ("USPS") postmark. In that instance, the postmark date is considered the presumptive date of filing, regardless of when the IRS actually receives the document—but the document must actually be received by the IRS. § 7502(a)(1). Second, the taxpayer can show timely mailing by certified or registered mail. In that instance, the date of registration is deemed the date of filing, and it is presumed the IRS actually received the document. § 7502(c)(1). The problem for the McBradys here is that they cannot avail themselves of either exception: it is undisputed the IRS never received their refund claim (defeating application of § 7502(a)(1)), and the McBradys do not allege they used registered or certified mail (defeating application of § 7502(c)(1)).

Yet, this is not the end of the story, because the McBradys argue the Court may apply the *common-law* mailbox rule to save their 2009 refund claim. Although Congress endorsed a modified version of the common-law mailbox rule when it enacted § 7502 in 1954, courts have disagreed whether the statutory exceptions provided the *only* means to show timely filing—in other words, whether § 7502 essentially preempted the common-law mailbox rule. The Second and Sixth Circuits, for example, have concluded that § 7502 provides the exclusive means to show a timely filing by mailing. *See, e.g., Miller,* 784 F.2d at 730–31 ("[T]he only exceptions to the physical delivery rule available to taxpayers are the two set out in section 7502."); *Deutsch v. CIR,* 599 F.2d 44, 46

(2d Cir.1979). The Court of Federal Claims, too, "has consistently held that § 7502 provides the only exceptions." *Martinez v. United States,* 101 Fed.Cl. 688, 692 (2012). Several other courts, including the Third and Tenth Circuits, have reached the opposite conclusion. *See, e.g., Phila. Marine Trade Assoc.–Int'l Longshoremen's Assoc. Pension Fund v. CIR,* 523 F.3d 140, 147 (3d Cir.2007) ("Two of our sister Circuit Courts—the Second and Sixth—have held that the common-law mailbox rule has been preempted by 26 U.S.C. § 7502. We disagree."); *Sorrentino v. IRS,* 383 F.3d 1187, 1191–93 (10th Cir.2004).

Critical here, in *Estate of Wood v. CIR,* the Eighth Circuit held that § 7502 did *not* provide the exclusive means of showing a timely filing when a tax-refund claim was mailed. 909 F.2d 1155 (8th Cir.1990). In *Wood,* the IRS did not receive the taxpayer's claim, but the Tax Court accepted the testimony of a postal employee who recalled affixing a postmark to the claimant's envelope and placing it with outgoing mail prior to the filing deadline. *Id.* at 1157. The Tax Court held that such evidence was sufficient to show a timely filing, and the Eighth Circuit affirmed.

■ Seizing upon *Wood,* the McBradys have submitted Declarations from two ImageTrend employees and their accountant averring that postage was affixed to their refund claim, which was then deposited in the mail, on September 12, 2013, just before the filing deadline. Hence, they argue their claim was timely filed with the IRS, extending jurisdiction to the Court over the present claim for a refund. (Mem. in Opp'n at 5–14.) While perhaps superficially appealing, this argument falters for two reasons.

First, the Court does not believe *Wood's* narrow holding applies here. 909 F.2d at 1161 (noting *Wood* was a "most unusual

case"). The IRS never rebutted the taxpayer's assertion in *Wood* that it had mailed the refund claim. *Id.* at 1157 (noting the IRS had "adduced no evidence before the tax court that [it] did not receive" the claim). Here, by contrast, the IRS has submitted a Declaration of an IRS employee expressly denying that the claim was received by the agency. Moreover, the evidence of mailing in *Wood* came from a disinterested postal employee, rather than from employees or agents of the claimant, as in this case. *See id.* (noting the estate had provided "evidence verifiable beyond any self-serving testimony of a taxpayer who claims that a document was timely mailed"). Finally, *Wood* hinged on evidence of a *postal-service* postmark, presumably occurring on the date of the mailing itself. Here, however, there is no evidence of a postal-service postmark, because the McBradys used a *private* postage meter—which presumably could be stamped with any date, not necessarily the date of actual mailing. For these reasons, the Court does not believe the McBradys can squeeze their claim through the narrow opening created by *Wood.*

Second, and more importantly, the Court doubts whether *Wood* remains good law. Notably, Congress expressly authorized the Secretary of the Treasury to issue regulations limiting the type of evidence a taxpayer may offer to show proof of timely mailing and, hence, timely filing. 26 U.S.C. § 7502(b). To clear up the confusion created by the Circuit split noted above, in 2004 the Secretary of the Treasury proposed regulations "lay[ing] out a general rule that § 7502 requires actual delivery," for which the only exceptions are (1) "proof of proper use of registered or certified mail" and (2) "proof of proper use by a duly designated [private delivery service]," such as Federal Express. *Maine Med. Ctr. v. United States,* 675 F.3d 110, 118 (1st Cir.2012) (quoting 26 C.F.R. § 301.7502–1(e)(1), (2)). "The regulations further emphasize the exclusivity of the exceptions, stating that *'[n]o other evidence of a postmark or of mailing will'* " *suffice. Id.* (emphasis added) (quoting 26 C.F.R. § 301.7502–1(e)(2)). The regulations were made applicable to all documents mailed after September 21, 2004, *see* 26 C.F.R. § 301.7502–1(g)(4), although they did not become final until August 23, 2011, *see* Timely Mailing Treated as Timely Filing, 76 Fed.Reg. 52,561 (Aug. 23, 2011).[3]

The Court perceives no reason why it should not defer, under *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to these regulations as reasonable interpretations of § 7502, especially because Congress expressly delegated to the Secretary of the Treasury the authority to regulate in this area. And in light of the regulations, the Court does not believe *Wood* remains viable. *See Maine Med. Ctr.,* 675 F.3d at 118 ("MMC's ... problem is that, since the time of the Eighth ... Circuit decision[ ], the IRS has issued regulations interpreting § 7502 that would appear to foreclose the use of extrinsic evidence as a means of proving a timely postmark."); *Phila. Marine,* 523 F.3d at 152 n. 14 (noting that "[t]he Department of the Treasury has proposed a regulation that, if valid, would seemingly negate [Wood's] holding for some future cases"). And, because the McBradys do not fall within the exceptions enumerated in the regulations, their 2009 refund claim is untimely and the Court lacks jurisdiction to consider it.

---

**3.** The Secretary of the Treasury is expressly authorized to make regulations retroactive to the date of their proposal. 26 U.S.C. § 7805(b)(1)(B).

1018

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. No. 11) is **GRANTED** and the McBradys' Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**