T.C. Memo. 2000-36

UNITED STATES TAX COURT

LOREN H. SCHWECHTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15583-95.           Filed February 4, 2000.

<u>Leonard T. Timpone</u>, for petitioner.

<u>Lauren W. Gore</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent determined the following
deficiencies in petitioner's Federal income tax:

| Year | Deficiency |
|------|-----------|
| 1988 | $9,866 |
| 1989 | 1,612 |
| 1991 | 414 |

We must decide the following:

1. Whether the limitations period for assessing taxes for the years 1988 and 1989 has expired. We hold that it has not.

2. Whether petitioner has made overpayments with respect to 1988 and 1989. We hold that he has, to the extent provided.

3. Whether any credits or refunds of overpayments made by petitioner with respect to 1988 and 1989 are allowable. We hold they are not.

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and the attached exhibits. At the time of filing the petition, petitioner resided in Miami, Florida.

The dispute in this case centers upon whether petitioner timely filed his Federal income tax returns for years 1988 and 1989 or otherwise made a timely claim for refund for those years. Petitioner claims to have filed his 1988 and 1989 returns prior to the filing deadlines, including extensions, and that accordingly, the notice of deficiency issued by respondent in May 1995 with respect to those years was untimely. Petitioner offers no other argument or evidence to dispute the amount of the deficiencies determined for 1988, 1989, or 1991. Petitioner further claims that he is entitled to refunds for certain overpayments made with respect to 1988 and 1989 because he timely filed returns or made timely claims for refund through correspondence sent to respondent. Respondent contends, and his

records indicate, that although petitioner obtained 122-day extensions for filing his 1988, 1989, and 1991 returns, he did not file such returns until October 4, 1993, and accordingly the notice of deficiency is timely, and no timely claim for refund or credit with respect to 1988 or 1989 was made.

Petitioner is a nonpracticing attorney who formerly worked for respondent as an attorney in the estate and gift tax area. During 1988 and 1989, petitioner operated a consulting enterprise which valued businesses and performed forensic accounting work. During this period, petitioner also worked as an employee and Federal income tax was withheld from his wages.

Petitioner claims to have timely filed his returns for the years 1988 and 1989 on August 11, 1989, and May 7, 1990, respectively, taking into account the filing extensions that it has been stipulated he received. According to petitioner, he hand delivered these returns to one of respondent's offices in Florida, because he had experienced difficulties in the past with respect to prior returns in that respondent had mistakenly claimed that petitioner had failed to file them. Petitioner did not produce copies of these purportedly hand-delivered returns at trial and maintains that he inadvertently discarded them in May 1993, when disposing of records relating to his divorce. Respondent's records indicate that while petitioner filed for 4-month extensions for 1988, 1989, and 1991 on April 11, 1989,

April 15, 1990, and April 15, 1992, respectively, he did not file returns for those years until October 4, 1993. To prove that he filed his returns on time, notwithstanding the absence of copies of the timely filed returns or of any entry in respondent's records, petitioner relies on his own testimony, the testimony of his mother, a series of letters purportedly sent by him to respondent during the period 1989 through 1995, and evidence of certain divorce proceedings between him and his former spouse.

With respect to the divorce, petitioner claims that as part of protracted proceedings that lasted from 1983 until 1991, he was required to submit, and did submit, copies of his filed 1988 and 1989 returns to the divorce court. In addition, he asserts that his right to obtain a refund was used in the calculation of his child support obligations. However, petitioner never introduced any records from the divorce proceedings. In fact, the only records from the divorce proceedings that are in evidence were introduced by respondent, and they do not support petitioner's claims. In a judgment filed on October 30, 1989, the divorce court made detailed findings concerning petitioner's assets, which the court then allocated among petitioner's creditors and former spouse, to whom petitioner owed a family support arrearage of $29,773. Despite finding insufficient assets to satisfy petitioner's obligations, the divorce court made no mention of petitioner's 1988 return or the refund in

excess of $16,000 claimed thereon, even though the judgment was entered approximately 2-1/2 months after petitioner contends he filed his 1988 return.

Petitioner's mother (Mrs. Schwechter) testified that she recalled seeing copies of petitioner's tax returns for the years in issue that were stamped to indicate receipt by the Internal Revenue Service.[1] However, her testimony is inconsistent and contrary to other evidence in the record; we therefore find it unreliable. First, Mrs. Schwechter testified that she was present in the divorce court when petitioner was asked to produce his tax returns, including those for the years in issue, and that he produced such returns. Later, she testified that she saw copies of the returns, but she denied any recollection that those tax returns were presented during the divorce proceedings. Furthermore, Mrs. Schwechter could not recall any of the dates during 1988 and 1989 when the divorce hearings took place, despite the fact that she was a co-defendant and under subpoena to attend. Moreover, the divorce court's October 1989 judgment made no mention of any refunds owed to petitioner, supporting an inference that it did not obtain access to the 1988 return despite Mrs. Schwechter's testimony to the contrary. For all

---

[1] Mrs. Schwechter does not claim to have seen petitioner prepare or file his returns.

these reasons, we give little weight to Mrs. Schwechter's testimony.

Petitioner also introduced as circumstantial evidence of timely filing, and as documentation of subsequent informal claims for refund, copies of a series of letters purportedly sent by him to the Internal Revenue Service during the years 1989 through 1995. Three of the letters purportedly sent to respondent on December 17, 1989, April 4, 1990, and April 24, 1992, concern only petitioner's 1988 return. Another four letters purportedly sent to respondent on August 2, 1990, January 23, 1991, January 22, 1992, and March 16, 1992, address both petitioner's 1988 and 1989 returns. Two additional letters introduced by petitioner appear to be duplicate copies of one of the previously mentioned letters, and a third was dated after the mailing of the notice of deficiency. While the letters vary in length and specificity, they all make it clear that petitioner is seeking a refund for taxes paid in 1988 and/or 1989. Petitioner has offered the letters for two distinct purposes. First, petitioner offers the letters as circumstantial proof that he timely filed his 1988 and 1989 returns. Second, petitioner contends that the letters themselves constitute informal claims for refund.

We do not believe these letters are probative evidence because the record demonstrates that the dates on some of petitioner's correspondence with the Internal Revenue Service

have been misrepresented or falsified, casting doubt on the authenticity of the dates on the rest. For example, petitioner offered into evidence an undated letter from him addressed to the Internal Revenue Service, Collection Division, Atlanta, Georgia, in which he demands payment of refunds for the 1988 and 1989 taxable years. Attached to the letter as it was offered as an exhibit is a U.S. Postal Service Receipt for Certified Mail, with the addressee noted as "IRS Service Center, Atlanta Georgia" and a postmark of January 23, 1991. The clear import of stapling the January 23, 1991, certified mail receipt to the undated letter was to suggest that the letter had been sent on that date. However, petitioner also introduced the identical undated letter into evidence in two other formats. In one, the undated letter has attached to it a May 2, 1994, letter from respondent to which the undated letter appears to respond. In yet another exhibit, the copy of this same undated letter contains a stamp indicating receipt by respondent on June 8, 1994.

In another example, respondent introduced into evidence a letter written to respondent by petitioner which was dated February 24, 1995, and, according to both the date filled out on the facsimile cover sheet and the date stamp of the facsimile machine, was faxed to respondent on February 27, 1995. This February 1995 letter made specific reference to, and attached a copy of, another letter which petitioner claimed he had written

to respondent in 1993. However, the attached copy of the letter claimed by petitioner to have been written in 1993 is dated August 27, 1995. Asked at trial to account for this chronological discrepancy, petitioner offered no explanation.

We conclude that petitioner is, at best, confused about when he sent written correspondence to respondent. On this record, we find that the dates on the letters petitioner claims to have sent to respondent are unreliable, because it has been demonstrated in at least two instances that petitioner's claims about the dates of his letters are in error, creating an inference that the dates on other correspondence introduced by petitioner may have been altered. Moreover, there is insufficient evidence that the letters relied on by petitioner were in fact mailed to respondent. The one certified mail receipt introduced by petitioner is attached to a letter that other evidence indicates was sent approximately 3-1/2 years later, as discussed supra. Besides petitioner's self-serving testimony, the only proof that letters were actually mailed concerns two letters received by respondent on June 8, 1994, and February 27, 1995. Therefore, we conclude that the letters in the record are not probative on the question of whether petitioner timely filed his returns or made timely claims for refund with respect to any of the years in issue.

In addition to the foregoing difficulties with petitioner's corroborating evidence, his own testimony is highly implausible. As an explanation for the absence of stamped copies of the purportedly hand-delivered and timely filed returns, petitioner claims that he inadvertently discarded them in May 1993 when he disposed of records relating to his divorce proceedings.  We find it implausible that petitioner would not have kept closer track of these returns if, as he claims, he had experienced trouble in the past with the IRS losing his returns.  Moreover, petitioner claims to have written, and has introduced into evidence, several letters inquiring about his refunds for 1988 and 1989 which purportedly were written prior to May 1993.  We find it remarkable, given petitioner's work experience with the IRS, that not one of these letters expressing concern about overdue refunds enclosed a copy of the timely filed returns for the years in issue if such returns were in fact in petitioner's possession until May 1993.  Finally, we find it implausible that petitioner discarded the returns, yet managed to retain copies of extensive pre-May 1993 correspondence that he purportedly sent to respondent concerning the returns.

The parties agree that petitioner submitted returns for 1988 and 1989 on October 4, 1993.  Petitioner contends that such returns were merely duplicates of previously filed, timely returns.  Respondent contends that no returns for 1988 or 1989

were filed until that date.  On the basis of the entire record in this case, we conclude that petitioner has failed to show that a return was filed, or that a claim for refund was made, prior to October 4, 1993.

On the returns submitted on October 4, 1993, petitioner reported wages, interest, and dividend income for 1988 and 1989 of $82,452.96 and $22,716.54, respectively.  Petitioner claimed Schedule C business deductions for 1988, 1989, and 1991 of $61,381, $46,062, and $30,374, respectively.  After claiming various deductions not at issue in this case, the returns show taxes of $2,501 for 1988 and $0 for 1989.  For 1988 and 1989, $19,209 and $5,295.87[2] were withheld from petitioner's wages, respectively.  The returns sought refunds of $16,708 and $7,796.87[3] for 1988 and 1989, respectively.

On May 11, 1995, respondent issued a notice of deficiency with respect to petitioner's 1988, 1989, and 1991 taxable years. In the notice, respondent disallowed Schedule C business expenses in the amount of $34,381, $30,770, and $11,021 in 1988, 1989, and

---

[2] Although the parties' stipulation states the amount withheld for 1989 was $5,285.87, petitioner's return for the year, respondent's certificate of assessments and payments for petitioner with respect to that year, and an earlier stipulation record the figure as $5,295.87.

[3] The $7,796.87 refund sought for 1989 exceeds the $5,295.87 in withheld taxes for that year by $2,501.  On his 1989 return, petitioner appears to have treated the $2,501 in taxes shown as due on his 1988 return as an amount available as a credit against his 1989 tax liability.

1991, respectively. Respondent also determined that petitioner had unreported unemployment compensation income of $5,200 in 1989 and was liable for self-employment tax of $414 in 1991. After taking into account certain net operating loss carrybacks, the notice determined deficiencies of $9,866, $1,612, and $414 for 1988, 1989, and 1991, respectively.

1. The Deficiency Determinations

Petitioner has offered no evidence or argument in support of his averments in the petition that respondent's deficiency determinations for the years in issue are in error, other than to claim that the notice of deficiency is invalid because untimely.

The Commissioner has 3 years from the time a return is filed to issue a notice of deficiency with respect to income tax. See secs. 6212(a),[4] 6213(a), 6501(a), 6503(a)(1). Even if petitioner's claim based on the statute of limitations were properly before the Court,[5] he would not prevail. In general, a return is deemed to have been filed when it is received by

---

[4] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[5] Petitioner did not raise this claim in his petition or seek amendment thereto. See United Bus. Corp. of Am. v. Commissioner, 19 B.T.A. 809, 831-832 (1930), affd. 62 F.2d 754 (2d Cir. 1933); Oliver v. Commissioner, T.C. Memo. 1997-84; see also Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Badger Materials, Inc. v. Commissioner, 40 T.C. 1061, 1062-1063 (1963), withdrawing in part and modifying 40 T.C. 725 (1963).

respondent. See United States v. Lombardo, 241 U.S. 73, 76 (1916). As previously discussed, we do not find petitioner's testimony, or the corroborating evidence he has offered, reliable or credible with respect to his claim that he timely filed his returns for the years in issue. Moreover, even if any of petitioner's evidence were reliable, it would still fall short of the type of corroboration we have found sufficient to prove timely filing when a return is lost and the Commissioner has no record of receiving it. Typically, we have required reliable testimony or other corroborating evidence of the circumstances surrounding the return's preparation and mailing. See, e.g., Estate of Wood v. Commissioner, 92 T.C. 793 (1989), affd. 909 F.2d 1155 (8th Cir. 1990); Mitchell Offset Plate Serv., Inc. v. Commissioner, 53 T.C. 235, 239-240 (1969); see also Rakosi v. Commissioner, T.C. Memo. 1993-68 (taxpayer failed to prove she filed her return where she did not produce any documentary evidence of timely mailing and relied solely on the self-serving testimony of herself and her husband), affd. without published opinion 46 F.3d 1144 (9th Cir. 1995). Here petitioner has offered no corroborating evidence with respect to the preparation, mailing, or delivery of the returns. Thus we conclude that petitioner did not file his 1988 and 1989 returns prior to October 4, 1993. Since we conclude that petitioner did not submit returns for the years in issue until October 4, 1993,

the May 11, 1995, notice of deficiency was timely because issued within 3 years of October 4, 1993. In the absence of any other evidence or argument to support petitioner's allegations of error, respondent's deficiency determinations for the years in issue are sustained.

## 2. Amount of Overpayment

The parties have stipulated that $19,209 and $5,295.87 were withheld from petitioner's wages in 1988 and 1989, respectively. Section 6401(b) provides that refundable credits, such as taxes withheld from wages under section 31, exceeding the income tax imposed for each year shall be considered overpayments of tax. In the instant case, the income tax imposed for 1988 and 1989 equals the sum of the deficiency and the amount shown as tax by the petitioner on his return for each year. See sec. 6211(a) and (b)(1). For 1988, the deficiency is $9,866 and the amount shown on the return was $2,501; thus, the income tax imposed for 1988 is $12,367. For 1989, the deficiency is $1,612 and the amount shown on the return was $0; thus, the income tax imposed for 1989 is $1,612. Accordingly, petitioner has an overpayment for 1988 of $6,842 (a section 31 credit of $19,209 less the tax imposed of $12,367), and an overpayment for 1989 of $3,683.87 (a section 31 credit of $5,295.87 less tax imposed of $1,612).

## 3. Petitioner's Entitlement to Credits or Refunds of the 1988 and 1989 Overpayments

Although we have determined that an overpayment exists, our jurisdiction to order a refund or credit of an overpayment is limited and depends upon when the taxes were paid. See secs. 6511(a) and (b) and 6512(b); Commissioner v. Lundy, 516 U.S. 235 (1996). The withholding taxes making up the overpayments for 1988 and 1989 are deemed paid on April 15, 1989, and April 15, 1990, respectively. See sec. 6513(b)(1). Under section 6512(b)(3), we may order the credit or refund of an overpayment only if one of three conditions is met. The first condition, set out in section 6512(b)(3)(A), requires that the tax be paid after the mailing of the notice of deficiency, which did not occur here.

The second condition, set out in section 6512(b)(3)(B), allows a credit or refund of an overpayment if a claim for refund deemed filed on the date the notice of deficiency was mailed would have constituted a timely claim for refund of the overpaid amount under applicable limitations periods prescribed in section 6511(b)(2), (c), or (d). Since the returns for 1988 and 1989 filed by petitioner on October 4, 1993, each sought a refund, petitioner made actual claims for refund for both years more than 19 months earlier than a claim deemed filed, pursuant to section 6512(b)(3)(B), on the date of the May 11, 1995, notice of

deficiency. Thus, the deemed claim under section 6512(b)(3)(B) offers no benefit to petitioner.

The third condition, set out in section 6512(b)(3)(C), applies where an actual claim for refund, which is timely under section 6511, has been filed before the mailing of the notice of deficiency and either has not been disallowed or, if disallowed, was or could have been the basis of a timely refund suit as of that date. In such circumstances, any credit or refund is limited to taxes paid within the periods specified in section 6511(b)(2), (c), or (d).

As noted, the 1988 and 1989 returns filed by petitioner on October 4, 1993, each sought a refund; thus the refund claim on each return would be timely under section 6511 because made "within 3 years from the time the return was filed". Sec. 6511(a). We therefore consider whether the taxes at issue were paid within the periods specified in section 6511(b)(2), (c), or (d). Section 6511(c) and (d) contains special rules not applicable in this case. We accordingly consider section 6511(b)(2).

Section 6511(b)(2) limits the allowance of a claim for credit or refund based upon whether the claim was filed within 3 years from the filing of the return, see sec. 6511(b)(2)(A), was not filed within such period, see sec. 6511(b)(2)(B), or was not filed at all prior to allowance, see sec. 6511(b)(2)(C). The

returns filed on October 4, 1993, for 1988 and 1989 both asserted claims for refund (which accordingly fall within the 3-year period), subjecting these claims to the limitation imposed by section 6511(b)(2)(A). Under this limitation, the overpaid taxes must have been paid in the 3-year period, plus any return filing extensions, immediately preceding the filing of the claim. Thus, only taxes paid in the 3 years and 122 days[6] preceding October 4, 1993--that is, after June 3, 1990--are subject to credit or refund based on the claims made in the October 4, 1993 returns. As the taxes at issue were deemed paid on April 15, 1989, and April 15, 1990, we do not have authority under section 6511(b)(2)(A)(as incorporated by section 6512(b)(3)(C)) to credit or refund them based on petitioner's late-filed 1988 and 1989 returns.

Petitioner also argues that the various letters he wrote to respondent inquiring about his 1988 and 1989 refunds constitute informal claims for refund. While petitioner introduced into evidence certain letters purporting to have dates prior to April 15, 1991, and April 15, 1992, we have concluded, for the reasons previously discussed, that these letters were not sent to respondent on or near the dates indicated on the letters. The only letters of petitioner's in the record for which there is

---

[6] It has been stipulated that petitioner received 122-day extensions for filing both his 1988 and 1989 returns.

evidence of receipt by respondent were sent in 1994 and 1995. Thus, petitioner has not made a claim for refund prior to October 4, 1993, and accordingly we are without authority to order a credit or refund of taxes under section 6511(b)(2)(B) (as incorporated by section 6512(b)(3)(C)).

We therefore conclude that we are without authority to order any credit or refund of petitioner's 1988 and 1989 overpayments. Nevertheless, although neither party has addressed this issue, our conclusion regarding the overpayments does not mean that petitioner is required to make any payment in respect of the 1988 and 1989 deficiencies sustained herein. Petitioner is entitled to offset his unassessed withholding taxes for 1988 and 1989 against the 1988 and 1989 deficiency amounts, respectively. See White v. Commissioner, 72 T.C. 1126, 1133 (1979) (estimated taxes may offset tax liability attributable to a deficiency for same year); Baral v. Commissioner, T.C. Memo. 1978-383 (withholding taxes may offset tax liability attributable to a deficiency for same year).

To reflect the foregoing,

Decision will be entered

under Rule 155.