T.C. Memo. 2002-321


UNITED STATES TAX COURT


FLETCHER H. HYLER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11023-01L.          Filed December 30, 2002.


Fletcher H. Hyler, pro se.

Thomas R. Mackinson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  After conducting a hearing, respondent sent to petitioner a Notice of Determination Concerning Collection Actions(s) Under Section 6320 and/or 6330.  The notice of determination informed petitioner that the Appeals officer declined to invalidate assessments of Federal income taxes for petitioner's 1995 and 1997 taxable years and declined to withdraw

the Notice of Federal Tax Lien.  After concessions, the issues for decision are:  (1) Whether notices of deficiency regarding petitioner's tax liabilities for 1995 and 1997 were barred by a directive from the National Taxpayer Advocate's office; (2) whether notices of deficiency for 1995 and 1997 were sent to petitioner's last known address; (3) whether petitioner was denied due process with respect to the notice of lien; and (4) whether assessment of taxes and penalties for 1995 was barred by the statute of limitations or otherwise violated applicable regulations.  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Portola Valley, California, at the time he filed his petition.

Petitioner holds at least one advanced academic degree and has lectured at the Stanford School of Business.  During the years in issue, petitioner and his spouse owned a marketing corporation, Logical Marketing, Inc.  Petitioner served as its chief executive officer.

On or about March 9, 1998, petitioner agreed to a decision in this Court at docket No. 25288-96 determining a deficiency in income tax due from him for 1993 in the amount of $57,255 and a

penalty under section 6662(a) in the amount of $11,451. At the time the notice of lien involved in this case was filed, some part of the deficiency for 1993 had not been paid.

Petitioner's 1995 Federal Tax Return

Petitioner obtained an extension to August 15, 1996, to file his 1995 Federal income tax return. On February 17, 1997, respondent sent to petitioner a delinquency notice requesting that he file his 1995 return. The Internal Revenue Service (IRS) received an unsigned and undated 1995 return for petitioner on March 31, 1997; the return gave an address for petitioner in Woodside, California.

Shortly thereafter, the IRS made a mathematical adjustment to the 1995 income tax return relating to whether petitioner should receive credit for $3,800 in estimated tax payments or tax payments from a prior year against his tax liability of $3,857.41. The IRS sent to petitioner a notice of balance due. On July 25, 1997, the IRS filed a Notice of Federal Tax Lien for 1995 and for taxes outstanding for other periods. In July 1998, a payment of $6,748.62 was applied to the 1995 liability. This amount included tax of $3,857.41, an estimated tax penalty of $210.58, a late filing penalty of $867.92, a failure to pay tax penalty of $771.48, and assessed interest totaling $1,041.23. After the payment, the IRS abated $250.73 of the previously assessed failure to pay tax penalty and the entire $867.92 late

filing penalty. The IRS also abated $185.51 of the assessed interest. These abatements resulted in a credit of $1,304.16 in favor of petitioner, which was applied to his outstanding liabilities for 1993.

Revenue Agent Brian Rausch (Rausch) began an examination of other aspects of petitioner's 1995 income tax return on December 31, 1997. Connie Stone (Stone), petitioner's sister and a resident of Virginia, represented petitioner. Stone falsely represented that she was licensed as a certified public accountant. The examination focused on Schedule C, Profit or Loss From Business, deductions claimed by petitioner. During the examination, Stone requested that petitioner's address be changed to her address in Henry, Virginia. The IRS entered this change into its records during the week of August 16, 1998. On August 18, 1998, the IRS received petitioner's 1997 Federal income tax return, which was timely filed pursuant to an extension of time. This return bore the Woodside address. Its receipt caused the IRS again to change its records, during the week of October 25, 1998, to reflect that petitioner's address was once again the Woodside address.

At the end of November 1998, petitioner moved from the Woodside address to Portola Valley, California. He submitted a mail forwarding request to the U.S. Postal Service reflecting his move.

Petitioner sold the Woodside property for $1.6 million and acquired the Portola Valley property for $4 million. He estimated that the Portola Valley property was worth $6.5 million when he bought it and $10 million at the time of trial in May 2002. He applied available funds to the debt on his Portola Valley residence rather than to his outstanding tax liabilities (acknowledged at $67,000) because of the perceived necessity of maintaining his residence and his lifestyle for business reasons.

On February 3, 1999, Rausch sent a 30-day letter explaining proposed deficiencies for 1995. In response, Stone filed a timely protest requesting that the proposed deficiency for 1995 be reviewed by the IRS Appeals Division. Appeals Officer Lawrence Dorr (Dorr) of the San Francisco Appeals Office undertook the requested review. Beginning in April 1999, he sent at least four contact letters to Stone and spoke with her on the telephone on at least one occasion. During the course of their discussions, Stone did not inform Dorr that petitioner had moved from the Woodside address shown on his 1997 return.

Stone did, however, send to Dorr a facsimile cover sheet requesting more time to submit information. On June 25, 1999, Dorr replied in a letter stating that, if his office did not see some progress on the matter within 2 weeks, it would be necessary to issue a notice of deficiency. Stone did not reply to that letter, and, on August 19, 1999, the San Francisco Appeals Office

sent a notice of deficiency for 1995. The notice proposed a deficiency of $65,975 and an addition to tax of $16,494 for late filing, plus an accuracy-related penalty of $13,195.07. The notice was sent by certified mail to petitioner at the Woodside address, and a copy was sent to Stone in Henry, Virginia. Stone received the notice of deficiency but did not inform petitioner, believing that some contacts she had made with the Office of the Taxpayer Advocate precluded further action by the IRS.

Petitioner did not file a petition with this Court with respect to the 1995 deficiency during the time permitted, which expired November 17, 1999. On February 7, 2000, the deficiency for 1995 was assessed. The amounts assessed have not been paid.

Petitioner's 1997 Federal Income Tax Return

On July 16, 1999, the Philadelphia Service Center sent a notice of deficiency for 1997 by certified mail to petitioner at the Woodside address. That notice contained a mathematical computation based on failure to calculate the alternative minimum tax. Petitioner did not file a petition with this Court seeking review of the 1997 deficiency. That deficiency was assessed on December 20, 1999, and has not been paid. Petitioner subsequently submitted an amended 1997 return.

Petitioner's 1998 Federal Income Tax Return

Sometime before August 18, 1999, petitioner submitted an unsigned Form 4868, Application for Automatic Extension of Time

To File U.S. Individual Income Tax Return for 1988. The Form 4868 listed petitioner's address as the Portola Valley address. The Form 4868 did not contain petitioner's Woodside address, nor did it state that the application was intended as a notification of a change of address. The IRS did not receive a 1998 Federal income tax return from petitioner until May 14, 2001. This was the first time that petitioner had submitted a Federal income tax return that reflected petitioner's Portola Valley address. Petitioner's taxable year 1998 is not otherwise before the Court.

Petitioner's Suit for Damages

Petitioner had some complaints about IRS collection activities. Petitioner and Stone contacted the Office of the Taxpayer Advocate concerning petitioner's complaints. They visited that office in Washington, D.C., in February 1999 and provided the Portola Valley address to Sharese Stevens of that office. He filed an administrative claim for damages with the District Director in Oakland, California, on July 15, 1999. The claim listed petitioner's address as the Portola Valley address. The claim did not contain petitioner's Woodside address, nor did it state that the claim was intended as a notification of a change of address.

At the request of the National Taxpayer Advocate, consideration of petitioner's administrative claim was transferred from Oakland, California, to Seattle, Washington.

The Office of the Taxpayer Advocate also requested suspension of collection activities during the consideration of petitioner's administrative claim, and the IRS did not undertake collection activities while petitioner's claim was pending.

In the Seattle Appeals Office, petitioner's claim was assigned for review to Special Procedures Advisor Jill Pace (Pace), who received it on August 6, 1999. On August 11, 1999, Pace sent to petitioner a form letter regarding the possibility of third-party contacts; her letter was sent to the Portola Valley address that was on petitioner's damages claim. Pace did not check IRS records to determine an alternate address for petitioner, and she was unaware that the address used by petitioner on the administrative claim was a new address. During her review of the administrative claim, Pace met with petitioner and Stone. Neither petitioner nor Stone informed Pace of petitioner's change of address the previous November. Petitioner did, however, provide a Form 2848, Power of Attorney and Declaration of Representative, appointing Stone as his representative for multiple income tax periods including 1993, 1995, and 1997.

On December 28, 1999, the holder of a deed of trust on petitioner's residence commenced a nonjudicial foreclosure proceeding with the filing of a Notice of Default and Election to

Sell Under Deed of Trust. Petitioner did not inform the IRS of the default or the scheduling of the foreclosure sale.

On February 18, 2000, the District Director in Seattle, Pace's superior, denied petitioner's administrative claim for damages. Petitioner engaged an attorney, Richard R. Sayers (Sayers), to file a lawsuit in the United States District Court for the Western District of Virginia, captioned <u>Logical Marketing, Inc. and Fletcher H. Hyler, III v. United States</u>, Civil Action No. 7:00295, in which petitioner sought damages for IRS collection activities. Petitioner did not authorize Sayers to represent petitioner before the IRS, and the lawsuit did not seek to enjoin further efforts to collect petitioner's tax liabilities.

<u>Collection Activities</u>

Petitioner's collection case was transferred from Virginia to California and assigned to Revenue Officer David Rosado (Rosado) in Redwood City, California. Rosado obtained petitioner's Portola Valley address from the IRS computer system, which had been updated during the 12th week of the year 2000. At petitioner's behest, Rosado spoke to Stone on April 17, 2000, and informed her that he was considering filing a notice of Federal tax lien. Around this time, Stone received transcripts for the years 1993, 1995, and 1997 for petitioner's individual accounts.

On April 19, 2000, Rosado wrote to Stone. His letter noted that he and Stone had discussed a monthly payment plan for petitioner's 1993 income tax liability and asked for copies of a number of documents relating to petitioner's financial status. The letter further indicated that Rosado had enclosed transcripts of petitioner's income tax accounts for 1993, 1995, and 1997, as well as IRS publications relating to preparation of financial statements, to the IRS collection process, and to "Your Rights as a Taxpayer". The letter concluded as follows:

5.    Notice of Federal Tax Lien. Per our conversation, I will delay Filing Notice of Federal Tax Lien until May 15, 2000. At that time I will re-evaluate the need for filing. We had discussed alternatives to filing a Notice of Lien such as the posting of a bond. I would expect your proposal on this matter no later than 5/15/2000.

6.    You had indicated that notice of assessment for 1995 and 1997 was not received. Is this correct?

7.    For your information I have requested the administrative case file for 1995 and 1997, so that any issues can be addressed. As soon as I receive these files, I will share it with you. I also agreed to delay filing Notice of Federal Tax Lien for these periods until we can address the assessments. If there are no unresolved issues regarding assessments, then collection of the balance due will be addressed. Will also address filing of Notice of Federal Tax Lien.

8.    During the interim, please advise Mr. Hyler that he can begin sending payments of $5000 to my office. Please note that penalties and interest continue to accrue on any unpaid balance. This is not an acceptance of a monthly payment proposal. That will be determined at a later time.

Please have the completed Collection Information Statement and verification in my office no later than May 15, 2000. If you have any concerns or questions, you can reach me at the telephone number listed above. I am required to advise you that failure to provide the above information by the May 15, 2000 [sic] may result in enforcement action such as, issuance of Final Notice, Issuance of Notice of Levy, serving summons, filing Notice of Federal Tax Lien. Once again do not hesitate to call. Thank you.

Stone never sent to Rosado the information that he had requested in the April 19, 2000, letter. Stone did, however, send copies of the letter to petitioner and to Sayers.

Sayers wrote to Rosado requesting that collection action be halted until petitioner's lawsuit against the Government for damages was resolved. Rosado received that letter on May 11, 2000, and sought legal advice from IRS counsel regarding whether to proceed with collection while the lawsuit was pending. On June 5, 2000, IRS counsel advised him that collection could be pursued.

On June 13, 2000, the IRS sent a Notice of Federal Tax Lien to the County Recorder in San Mateo, California, for filing, indicating that petitioner had unpaid Federal income tax liabilities for 1993, 1995, and 1997. On June 16, 2000, the IRS sent to petitioner a Notice of Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320 (Notice) for those years. The notice of lien was recorded in San Mateo County on June 21, 2000. On July 20, 2000, petitioner's counsel timely filed a request under section 6320 for a hearing.

At the hearing, petitioner's then counsel Edward T. Perry (who represented petitioner through trial of this action but was permitted to withdraw at the conclusion of the testimony and before briefs were due) raised the following issues:

a) the filing of the Notice of Federal Tax Lien created a hardship for petitioner;

b) the filing of the lien was not justified because the IRS failed to provide clear notice to petitioner of an intention to file a Notice of Federal Tax Lien in advance of the lien filing;

c) the underlying assessment for 1995 was invalid because the statute of limitations on assessment had expired prior to assessment;

d) the underlying assessments for 1995 and 1997 were invalid because the notices of deficiency were not mailed to petitioner's last known address;

e) the notice and demand for payment issued for each of the tax years 1995 and 1997 were invalid in that such notices were not mailed to petitioner's last known address and were issued during a stay of collection imposed by the Taxpayer Advocate;

f) the lien filing was defective in that it included the amount of a failure to file penalty for 1995, and the IRS had abated a previously assessed delinquency penalty; and

g) the lien filing was defective in that it included 1997, and petitioner did not recall an examination for that period.

While the Appeals process was in effect, the IRS issued Certificates of Subordination to permit petitioner to refinance his residential property on August 14, 2000, and again on July 31, 2001.

On August 31, 2001, the Appeals office issued an 8-page determination letter with respect to the matters raised at the hearing. It reported Appeals's determination that petitioner's liability for 1993 taxes was not properly at issue, because that year was the subject of a decision by this Court. It further determined that, because petitioner had been provided an opportunity to challenge the 1995 tax liability in the Appeals Division prior to assessment, the 1995 tax liability (including the late filing penalty) was not properly at issue in the hearing. Finally, it determined that no relief was available for either 1995 or 1997 because all administrative requirements had been met and notices of assessment and demand for payment with respect to those years had been sent to petitioner.

OPINION

Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person when a demand for the payment of the person's taxes has been made and the person fails to pay those taxes. Section 6322 provides that such a lien arises when an assessment is made. To protect the Government's rights to recover its unpaid taxes, section 6323(a) provides that the IRS may file a notice of Federal tax lien in order to establish the priority of its claims against the taxpayer's other creditors.

In the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746, Congress enacted sections 6320 (pertaining to liens) and 6330 (pertaining to levies) to provide protections for taxpayers in tax collection matters. Section 6320 requires that the Secretary notify a person who has failed to pay a tax liability of the filing of a notice of lien under section 6323. The notice required by section 6320 must be provided not more than 5 business days after the day of the filing of the notice of lien, pursuant to section 6320(a)(2). Section 6320 further provides that the person so notified may request administrative review of the matter (in the form of a hearing) within 30 days beginning on the day after the 5-day period. Under section 6320(c), the hearing generally is to be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Section 6330(c) permits the person notified to raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Section 6330(c)(2)(B) provides that the person notified may contest the existence and amount of the underlying tax liability at a hearing if that person did not receive a notice of deficiency for the taxes in question or did not otherwise have a prior opportunity to dispute the tax

liability. See <u>Sego v. Commissioner</u>, 114 T.C. 604, 609 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 179 (2000).

Section 6330(d) provides for judicial review of the administrative determination by this Court or by a Federal District Court, as may be appropriate. Where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. Where, however, the validity of the underlying tax liability is properly at issue, this Court will review the matter on a de novo basis. <u>Sego v. Commissioner</u>, <u>supra</u> at 610; see H. Conf. Rept. 105-599 at 266 (1998), 1998-3 C.B. 747, 1020.

<u>The Notices of Deficiency Regarding Petitioner's Tax Liabilities for 1995 and 1997 Were Not Barred by a Directive From the Office of the Taxpayer Advocate</u>

Within the IRS is an Office of the Taxpayer Advocate, headed by the National Taxpayer Advocate. Sec. 7803(c). Among the functions of the Office of the Taxpayer Advocate is to "assist taxpayers in resolving problems with the Internal Revenue Service". Sec. 7803(c)(2)(A)(i). A taxpayer seeking such assistance may file an application with the Office of the Taxpayer Advocate for a "Taxpayer Assistance Order" (TAO), which may be issued if the National Taxpayer Advocate determines that the taxpayer is or is about to incur "a significant hardship as a result of the manner in which the internal revenue laws are being administered" by the IRS. Sec. 7811(a)(1)(A). The Office of

Taxpayer Advocate is not restricted to issuance of TAOs in carrying out its functions of aiding taxpayers; section 7811(e) provides that none of the provisions of section 7811 prevents the National Taxpayer Advocate from taking any action in the absence of a taxpayer application.

In this case, the Office of the Taxpayer Advocate actively assisted petitioner during the time that he had an administrative claim for damages pending.  These activities included moving the locus of the dispute from San Francisco to Seattle and requesting that the IRS cease collection actions until petitioner's claim had been considered.

Section 7811(b)(2)(A) explicitly provides that a TAO may require cessation of any action with respect to the taxpayer "under chapter 64 (relating to collection)".  The issuance of a notice of deficiency, however, is provided for in chapter 63, relating to assessments.  Further, with exceptions not applicable here, a TAO may direct cessation of action under a provision other than chapter 64 only if that provision is "specifically described by the National Taxpayer Advocate in such order."  Sec. 7811(b)(2)(D).

There is no credible support for petitioner's claim that a TAO barred the issuance, in July and August 1999, of the deficiency notices for his 1995 and 1997 income taxes.  No copy of any TAO is in the record.  Pace testified that the Office of

the Taxpayer Advocate had requested a suspension of "the collection action". During July and August, there was no "collection action" related to petitioner's 1995 and 1997 taxable years. Petitioner's representative, Stone, claims to have been told in February 1999 that "no action would be taken." Her testimony, however, fails to make clear the context in which she allegedly received this advice. We do not believe that the request of the Office of the Taxpayer Advocate extended beyond collection actions to preclude the issuance of notices of deficiency for 1995 and 1997.

The Notices of Deficiency for 1995 and 1997 Were Sent to Petitioner's Last Known Address

Absent special circumstances, the IRS may not assess a deficiency in tax until after a valid notice of deficiency has been sent to the taxpayer. For that purpose, mailing a notice of deficiency to the taxpayer at the taxpayer's "last known address" is sufficient regardless of actual receipt or nonreceipt. Sec. 6212(b); see Pietanza v. Commissioner, 92 T.C. 729, 735-736 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); Shelton v. Commissioner, 63 T.C. 193 (1974).

Absent clear and concise notice of a change of address, a taxpayer's last known address is the address shown on the taxpayer's return that was most recently filed at the time that the notice was issued. King v. Commissioner, 857 F.2d 676, 681 (9th Cir. 1988), affg. 88 T.C. 1042 (1987); Abeles v.

Commissioner, 91 T.C. 1019, 1035 (1988); compare sec. 301.6212-2, Proced. & Admin. Regs., effective January 29, 2001.  In deciding whether a notice was mailed to a taxpayer at the taxpayer's last known address, the relevant inquiry "pertains to * * * [the Commissioner's] knowledge rather than to what may in fact be the taxpayer's most current address."  Frieling v. Commissioner, 81 T.C. 42, 49 (1983).

In order to supplant the address shown on the most recent return, a taxpayer must clearly indicate that the former address is no longer to be used.  Tadros v. Commissioner, 763 F.2d 89, 91-92 (2d Cir. 1985); Alta Sierra Vista, Inc. v. Commissioner, 62 T.C. 367 (1974), affd. without published opinion 538 F.2d 334 (9th Cir. 1976).  A taxpayer's use of an address different from that on the last-filed return in correspondence with officials of the IRS does not constitute clear and concise notice of a change of address.  King v. Commissioner, supra at 681.  The acquisition of a different address by IRS personnel generally fails to constitute adequate notice of a change of address when those personnel are not involved in issuing the statutory notices.  In United States v. Zolla, 724 F.2d 808, 811 (9th Cir. 1984), the Court of Appeals for the Ninth Circuit explained:

> If we required agents mailing notices of deficiency to take into account address information acquired by agents in different divisions in the course of unrelated investigations, the IRS could ensure that notices were validly addressed only by systematically recording in a central file all address information

> acquired in any fashion.  We decline to require the IRS
> to do that. * * * it would impose an unreasonable
> administrative burden on the IRS.  * * *

In this case, the notices of deficiency were mailed to the Woodside address listed on petitioner's 1998 return--the last return filed by petitioner prior to the mailing of the notices in July and August 1999.  Consequently, the notices of deficiency were mailed to petitioner at his last known address, unless petitioner can show otherwise.

Petitioner has not demonstrated that, before the 1995 and 1997 notices of deficiency were mailed, he provided the IRS with clear and concise notice of a change of address.  Nor has he shown that, prior to the mailing of the notice of deficiency, the IRS knew of a change in petitioner's address and did not exercise due diligence in ascertaining petitioner's correct address.  See Abeles v. Commissioner, supra; Alta Sierra Vista, Inc. v. Commissioner, supra at 374.

Petitioner maintains that he provided notification of his Portola Valley address on several occasions.  None of those occasions, however, provided the clear and concise notice needed to charge the IRS in the summer of 1999 with knowledge that Portola Valley was the last known address.

Petitioner principally urges that the IRS received clear and concise notice of an address change when, in 1998, Rausch was conducting an examination of petitioner's 1995 return.  During

this examination, Stone informed Rausch that petitioner's address had changed to Henry, Virginia. The IRS entered this change into its records but soon thereafter received petitioner's 1997 Federal income tax return. This return bore the Woodside address. Its receipt caused the IRS to change its records, during the week of October 25, 1998, to reflect that petitioner's address was once again the Woodside address. That address remained unchanged on IRS records until late in 2001, when petitioner's 1998 Federal income tax return was filed. In July and in August 1999, when the 1995 and 1997 notices of deficiency were mailed, IRS records indicated that petitioner's address was the Woodside address, the one appearing on his last-filed Federal income tax return. There is no indication that either notice was returned to the IRS undelivered, so there was no reason for the IRS to conduct a further search for petitioner's address. (Petitioner speculated at trial that mail may have been stolen from his mailbox at the Portola Valley residence. If that were the case, however, it would not be attributable to any error on the part of the IRS.)

In any event, petitioner did not move to Virginia. The Virginia address was the address of Stone. Subsequent correspondence between Dorr and Stone indicated that petitioner continued to live in California while Stone lived in Virginia. Moreover, a copy of the 1995 notice was sent to the Henry,

Virginia, address.  Stone neglected to advise petitioner of receipt of that notice.  Petitioner seeks to disavow some communications sent to Stone.  His inconsistent positions concerning her authority and her misrepresentations of her capacity are not attributable to respondent.  See Lefebvre v. Commissioner, T.C. Memo. 1984-202, affd. 758 F.2d 1340 (9th Cir. 1985).  Any confusion was created by petitioner and his representative, and their communications cannot be characterized as clear and concise.

We are unpersuaded by petitioner's contentions that, on other occasions, he or Stone had provided clear and concise notification of his new Portola Valley address before the 1995 and 1997 deficiency notices were mailed.  Those occasions involved persons who were either with the Office of the Taxpayer Advocate, the Special Procedures Office, or the Collection Division.  Petitioner's use of a new address in dealings with persons who were not involved with the issuing of deficiency notices did not require them to compare the address petitioner used to the last known address otherwise on file.  United States v. Zolla, 724 F.2d at 811; see also Rev. Proc. 90-18, 1990-1 C.B. 491.

Another notification of a new address, petitioner argues, came when IRS received an unsigned Form 4868 seeking an automatic extension of time within which petitioner might file his 1998

Federal income tax return. The Form 4868, which was mailed
sometime prior to August 18, 1999, used the Portola Valley
address. However, the Form 4868 does not indicate that it is
intended as a notification of a change of address. Under these
circumstances, the submission of a Form 4868 does not constitute
the requisite notification that the address it contains is a new
address for the taxpayer. Monge v. Commissioner, 93 T.C. 22, 32
(1989).

We conclude that petitioner's haphazard use of his new
address did not constitute "clear and concise written
notification". He fell short of placing the examination division
on notice that the Woodside address, the address appearing on his
last-filed return, was not his last known address. We conclude
that the notices of deficiency for 1995 and 1997, which were
mailed to the Woodside address, were valid.

Due Process Was Not Offended by Efforts To Collect Petitioner's
Tax Liabilities

The IRS has published a list of policies regarding the
administration of the internal revenue laws in the Internal
Revenue Manual. One section of the Manual describes the filing
of notices of tax lien, as follows:

> (1) Notices of lien generally filed only after
> taxpayer is contacted in person, by telephone or by
> notice: A notice of lien shall not be filed, except in
> jeopardy assessment cases, until reasonable efforts
> have been made to contact the taxpayer in person, by
> telephone or by a notice sent by mail, delivered in
> person or left at the taxpayer's last known address, to

afford him/her the opportunity to make payment.  All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.  [1 Administration, Internal Revenue Manual (CCH), sec. 1.2.1.5.13, at 3002-3003.]

Policy statements in the Internal Revenue Manual do not confer enforceable rights on taxpayers.  Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. 153, 161 (1998), affd. without published opinions sub nom. Tucek v. Commissioner, 198 F.3d 259 (10th Cir. 1999), Drake Oil Tech. Partners v. Commissioner, 211 F.3d 1277 (10th Cir. 2000).  In any event, it is apparent to us that the IRS met the requirements of the policy statement before filing the notice of lien.  Early in 2000, Rosado contacted petitioner's representative, Stone, and discussed with her payment of amounts owing.  His letter of April 19, 2000, enclosed transcripts of petitioner's income tax accounts for 1993, 1995, and 1997.  It suggested that petitioner begin making payments of $5,000 monthly to reduce the amount of tax owing and resulting interest charges.  The letter requested information from petitioner and explained:

> I am required to advise you that failure to provide the above information by the May 15, 2000 [sic] may result in enforcement action such as, issuance of Final Notice, Issuance of Notice of Levy, serving summons, filing Notice of Federal Tax Lien. * * *

This letter, a copy of which Stone forwarded to petitioner, adequately provided petitioner with the opportunity to make

payment of the liabilities specified and warned him of the consequences of doing nothing.

Petitioner further argues that respondent was required to send to him notice of intent to file the notice of tax lien before the notice was actually filed, but petitioner is incorrect. Section 6320 only requires that notice be sent to the taxpayer within 5 days after the notice of tax lien has been filed.

Petitioner argues that respondent violated some procedures set forth in the Fair Debt Collection Practices Act (FDCPA), Pub. L. 95-109, 91 Stat. 874 (1977), 15 U.S.C. sec. 1692 (2000). By its terms, however, that act does not apply to employees of the Government whose collection activities are part of their jobs. See 15 U.S.C. sec. 1692a(6) (2000). Congress has amended the Internal Revenue Code to require respondent to observe some FDCPA procedures. See sec. 6304 as added by RRA 1998, sec. 3466, 112 Stat. 768; see also H. Conf. Rept. 105-599, at 291 (1998), 1998-3 C.B. 747, 1045. Petitioner's reliance upon FDCPA practices that Congress has not included in the Internal Revenue Code is unavailing.

Nor has petitioner convinced us that respondent has deprived him of constitutional due process by a perceived accumulation of procedural mistakes. As we noted at trial, mistakes have been made by both sides in this dispute. None of respondent's

mistakes, however, have deprived petitioner of his right to notice and a fair hearing, either at the administrative level or before this Court.

The Assessment of Taxes and Penalties for 1995 Was Valid

Respondent concedes that petitioner did not receive a copy of the notice of deficiency for 1995 and that the underlying liability for 1995 is therefore properly considered in this proceeding.  Whether the limitations period has expired constitutes a challenge to the underlying tax liability.  Boyd v. Commissioner, 117 T.C. 127, 130 (2001).

Petitioner contends that the statute of limitations bars assessment of his liabilities for 1995 and that the additions to tax should be abated because of prior administrative action.  He has not presented any evidence of error in the determination of taxable income or the calculations of tax liability.  Section 7491(a) does not apply because the examination of petitioner's liabilities in issue commenced before the effective date of that section.

The Commissioner has 3 years from the time a return is filed to issue a notice of deficiency with respect to income tax.  See secs. 6212(a), 6213(a), 6501(a).  Section 7502(a)(1) provides that, in certain circumstances, a timely mailed return will be treated as though it were timely filed.  Section 7502(a)(2) provides that the timely mailing/timely filing rule applies if

the postmark date on an envelope falls within the prescribed period on or before the prescribed date.  To establish that a return has been timely filed, we require reliable testimony or other corroborating evidence of the circumstances surrounding the return's preparation and mailing.  See, e.g., <u>Estate of Wood v. Commissioner</u>, 92 T.C. 793 (1989), affd. 909 F.2d 1155 (8th Cir. 1990); <u>Mitchell Offset Plate Serv., Inc. v. Commissioner</u>, 53 T.C. 235, 239-240 (1969); see also <u>Schwechter v. Commissioner</u>, T.C. Memo. 2000-36; <u>Rakosi v. Commissioner</u>, T.C. Memo. 1993-68, affd. without published opinion 46 F.3d 1144 (9th Cir. 1995).

Petitioner argues that Stone timely mailed a 1995 return on his behalf on or before August 15, 1996.  Thus, he concludes, assessment of his 1995 taxes on February 7, 2000, was beyond the applicable period of limitations.  There is neither reliable testimony nor corroborating evidence, however, sufficient to prove his claim.

Petitioner entrusted the preparation and filing of his return to Stone.  Stone and her former office assistant testified about office procedures in 1996.  Stone testified that she stamped petitioner's name on the return.  The assistant testified that the return would have been hand delivered to a window at the local post office, but no proof of mailing was obtained.  Stone claimed that a check was enclosed with the return and never cleared the bank, but her testimony about the amount of the check

was inconsistent with the balance shown on the copy of the return later produced. There was no explanation of the failure to follow up on the uncleared check. There is no evidence that a 1995 return was received by the IRS before March 31, 1997, when an unsigned and undated copy was delivered after an inquiry from the IRS. The record shows that petitioner was chronically delinquent in his tax obligations, and we cannot accept these unpersuasive assertions that a particular return was timely. We conclude that the assessment for 1995 was timely. (We need not, therefore, address respondent's contention that the return described by Stone was invalid for lack of petitioner's signature.)

The addition to tax under section 6651(a) is applicable unless a taxpayer establishes that the failure to file was due to reasonable cause and not willful neglect. Petitioner failed to exercise ordinary care and prudence in filing his 1995 return. Stone's office procedures may have contributed to the failure to make or to prove a timely filing. Nevertheless, reliance on an agent to file a timely return when the due date of the returns was ascertainable by the taxpayer does not constitute reasonable cause for excusing the taxpayer from statutory penalties for late filing. United States v. Boyle, 469 U.S. 241 (1985). Petitioner was aware that he had not signed a return for 1995. Accordingly,

petitioner is liable for the addition to tax under section 6651(a)(1).

Petitioner argues that earlier administrative actions of the IRS require a different result. Petitioner asserts that, because of previous abatement of $867.92 in late filing penalties, section 6406 operates to estop respondent from assessing $16,494 in late filing penalties that were subsequently determined in the notice of deficiency for 1995. Petitioner is incorrect. Section 6406 precludes review by "any other administrative or accounting officer, employee or agent of the United States" (emphasis added) of a decision of the Secretary or his delegate with respect to a claim by the taxpayer. Secs. 6406, 7701(a)(11)(B). By its terms, section 6406 does not preclude the Secretary or his delegate from reviewing prior actions. As explained in Hacker v. Commissioner, T.C. Memo. 1993-285, affd. 29 F.3d 632 (9th Cir. 1994):

> The legislative history of section 6406 indicates that such section was originally added for the purpose of prohibiting review of a decision of the Secretary of the Treasury (and his delegates, including the Commissioner) by employees of other agencies, such as the Comptroller General. See Hearings on H.R. 8245 Before the Senate Comm. on Finance, 67th Cong., 1st Sess. 299-300 (Sept. 1-Oct. 1, 1921); see also Crocker v. United States, 323 F. Supp. 718, 724-725 (N.D. Miss. 1971). Clearly, section 6406 does not estop the Commissioner, or his successor, from reviewing his own decisions. See E.A. Landreth Co. v. Commissioner, 11 B.T.A. 1, 23 (1928); see also Burnet v. Porter, 283 U.S. 230 (1931); McIlhenny v. Commissioner, 39 F.2d 356 (3d Cir. 1930), affg. 13 B.T.A. 288 (1928); Estate of Meyer v. Commissioner, 58 T.C. 69, 71 (1972).

The evidence before us discloses no reason for the original abatement of $867.92.  On the contrary, the evidence justifies imposition of the late filing additions.

Petitioner also contends that respondent conducted an unauthorized second examination of his books in violation of section 7605(b).  Petitioner's error arises from his misreading of the certificate of assessment and payments.  This document indicates that the matter of petitioner's 1995 tax liabilities was transferred without assessment from the IRS Examination Division to the IRS Appeals Office and then, when petitioner's administrative appeal was unavailing, back to the Examination Division for the assessment of the taxes in issue.  It does not show that there was an unauthorized second examination of petitioner's books and records with respect to his 1995 taxable year.

Our review of the procedures used in assessing and collecting petitioner's Federal income tax liabilities supports the Appeals officer's determination that the Notice of Federal Tax Lien should not be withdrawn.  Petitioner has not shown that respondent erred in declining to invalidate assessments of Federal income taxes for 1995 or 1997.  The assessments were made within the applicable period of limitations and were valid.

We have considered petitioner's other arguments.  Many of them relate to matters not properly before the Court or not supported by evidence or authority.  All lack merit.

To give effect to the foregoing,

<u>Decision with be entered</u>

<u>for respondent</u>.