T.C. Memo. 2017-167

UNITED STATES TAX COURT

JAROLD R. LAIDLAW AND DIANE LAIDLAW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRENT LAIDLAW AND REBECCA LAIDLAW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11180-12, 11182-12.          Filed August 28, 2017.

The due date for Federal individual income tax returns for tax year 2005 was Apr. 17, 2006. Ps filed their returns for that year on Oct. 16, 2006. They claim to have sent by regular mail on Apr. 17, 2006, applications for extensions of time to file their returns, but R claims not to have received them. R determined that Ps are liable for I.R.C. sec. 6651(a)(1) additions to tax for failure to timely file required returns.

Held: Ps are liable for I.R.C. sec. 6651(a)(1) additions to tax because, while R has carried his I.R.C. sec. 7491(c) burden of production, Ps have not come forward with evidence sufficient to persuade the Court that R's determination is incorrect. Higbee v. Commissioner, 116 T.C. 438 (2001), followed.

[*2]   <u>Steven S. Brown</u>, <u>Allen James White</u>, and <u>Denis J. Conlon</u>, for petitioners.

<u>Angela B. Reynolds</u>, <u>David Weiner</u>, <u>Elizabeth S. McBrearty</u>, <u>Kathryn E. Kelly</u>, and <u>Louis H. Hill</u>, for respondent.


MEMORANDUM OPINION


LARO, <u>Judge</u>:  These cases arise out of respondent's adjustments to petitioners' returns for the 2005, 2006, and 2007 tax years.  The cases were consolidated for trial, briefing, and opinion and were submitted fully stipulated under Rule 122.[1]

Respondent determined deficiencies in petitioners' Federal income tax, as well as additions to tax under section 6651(a)(1) and accuracy-related penalties under sections 6662(a) and 6662A, for the tax years and in the amounts as follows:

<u>Jarold R. and Diane Laidlaw, docket No. 11180-12</u>

|       |            | Addition to tax | Penalties | |
| Year | Deficiency | sec. 6651(a)(1) | Sec. 6662(a) | Sec. 6662A |
| --- | --- | --- | --- | --- |
| 2005 | $65,852 | $13,907.75 | $13,170.40 | -0- |
| 2006 | 123,844 | -0- | 24,768.80 | -0- |
| 2007 | 132,674 | -0- | -0- | $28,751.45 |

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the relevant years.  Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Brent and Rebecca Laidlaw, docket No. 11182-12

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalties Sec. 6662(a) | Sec. 6662A |
|------|------------|-------------------------------|----------------------|------------|
| 2005 | $97,403 | $24,350.75 | $19,480.60 | -0- |
| 2006 | 132,311 | -0- | 26,462.20 | -0- |
| 2007 | 141,910 | -0- | -0- | $33,539.80 |

The parties have settled all the issues in dispute save for the applicability of the additions to tax for failure to file required returns. Thus we decide whether petitioners Jarold R. and Diane Laidlaw and petitioners Brent and Rebecca Laidlaw are liable for additions to tax under section 6651(a)(1) for their respective 2005 tax years because they filed their Federal income tax returns after the date on which they were due. We hold that they are so liable.

## Background

I.      Overview

The parties submitted these cases fully stipulated under Rule 122. The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein, as are the stipulations to be bound and stipulations of settled issues. Petitioners are residents of California. These cases are appealable to the Court of Appeals for the Ninth Circuit absent stipulation of the parties to the contrary.

[*4] Jarold R. Laidlaw and Brent Laidlaw are brothers who own interests in Laidlaw's Harley Davidson Sales, Inc. These cases arose from a dispute about the values of their life insurance policies obtained in connection with their company's participation in the Sterling Benefit Plan, a purported welfare benefit plan. Respondent sent notices of deficiency to petitioners on February 2, 2012, showing the increases in tax, additions to tax, and accuracy-related penalties indicated above. Petitioners timely filed their petitions for redetermination of the deficiencies.

Pursuant to stipulations to be bound, the main issue in these cases was resolved by the Court's Opinion in Our Country Home Enters., Inc. v. Commissioner, 145 T.C. 1 (2015). The parties executed and filed joint stipulations of settled issues resolving their disagreements about respondent's adjustments and the applicability of accuracy-related penalties under sections 6662(a) and 6662A. The only question remaining unresolved is whether for tax year 2005 petitioners are liable for section 6651(a)(1) additions to tax because they were late in filing their Federal income tax returns.

II.    Petitioners' Accountant

Petitioners have retained Javier E. Morgan, C.P.A., and his accounting firm as their accountant and tax return preparer for all tax years since 1998, including

[*5] 2005. Mr. Morgan considers petitioners to be significant clients. For the years 2005 through 2015 Mr. Morgan prepared between 215 and 250 tax returns annually. For tax year 2005 he filed between 75 and 100 filing extension requests, approximately 90% of which he personally delivered to the post office. Mr. Morgan was aware of petitioners' distributions and wage income for 2005 and met with them at least monthly to review financial statements and other financial transactions. He also had access to and distribution authority over certain of their bank accounts.

III.    Extensions of Time To File Petitioners' Tax Returns

On April 17, 2006, the due date for filing tax returns for the preceding tax year, Mr. Morgan decided to apply for extensions of time to file petitioners' 2005 Federal income tax returns because he did not yet have Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., for that year. That day, Mr. Morgan and his staff prepared corresponding extension requests and estimates. Mr. Morgan's tax preparation business' billing records show that on April 17, 2006, he worked on "extensions" for Jarold and Diane Laidlaw and for Brent and Rebecca Laidlaw. In preparing the tax estimates for 2005, Mr. Morgan had in his possession Jarold Laidlaw's 2005 Forms W-2, Wage and Tax Statement, one from Laidlaw's Harley Davidson Sales, Inc., and the other from Laidlaw's Rental

[*6] Center, Inc., which together showed wage income of $468,244. Mr. Morgan also had Brent Laidlaw's 2005 Forms W-2 from the same payors, together showing wage income of $501,149. Mr. Morgan was aware that petitioners had received partnership distributions reportable on Schedules K-1, which for Jarold and Diane Laidlaw were reported on their 2005 Form 1040, U.S. Individual Income Tax Return, as $124,455, and for Brent and Rebecca Laidlaw were reported as $124,162.

Petitioners filed Forms 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, for tax years 2002, 2003, and 2004.

The 2005 Forms 4868 provided by petitioners to respondent on November 22, 2016, but ostensibly prepared by Mr. Morgan on April 17, 2006, reported zero amounts for estimated total tax liability, total 2005 payments, balance due, and amount being paid presently. The 2005 forms were not sent by certified mail, and respondent claims not to have received them. Mr. Morgan avers that both Forms 4868 were mailed in the same envelope. There is no copy of the envelope in which the forms were mailed.[2]

---

[2]Mr. Morgan stated in his deposition taken in these cases that he remembers taking the envelope to the post office on the Monday after April 15, 2006, which fell on a Saturday that year. Mr. Morgan believes that the postage on the envelope was 40 cents (the parties agree that the amount of postage for a one-ounce first

(continued...)

**[\*7]** IV.     Petitioners' Tax Withholding and Tax Returns

A.     Jarold and Diane Laidlaw

For 2005 Jarold and Diane Laidlaw had $80,224 withheld for Federal income tax and excess Social Security tax from payments reported on Forms W-2. They also made two estimated tax payments for tax year 2005:  $44,109 on October 20, 2005, and $32,500 on January 18, 2006.  Thus, as of April 17, 2006, Jarold and Diane Laidlaw had made total payments of $156,833 for their 2005 income tax liability.  Respondent received Jarold and Diane Laidlaw's 2005 Form 1040 on October 16, 2006.  The return showed total tax liability of $146,612 and an overpayment of $10,221 (which was applied to the following tax year's estimated tax, albeit reduced by a $743 estimated tax penalty).

---

[2](...continued)
class envelope on April 17, 2006, was 39 cents) but admits that it was his wife who affixed the postage.  He claims to remember that the envelope bore a Fresno, California, address because no payment was included with the Forms 4868; the return address listed, he claims, was his accountancy firm's office address.  It is his practice, Mr. Morgan testified, to look at each envelope he mails as he is walking into the post office before depositing the envelope into the receptacle in the post office entryway.  Mr. Morgan has only once noticed postage missing from an envelope mailed by his office and claims never to have had an envelope addressed to the Internal Revenue Service (IRS) returned by the post office because of insufficient postage or an incorrect address.

[*8]    B.    Brent and Rebecca Laidlaw

For 2005 Brent and Rebecca Laidlaw had $84,864 withheld for Federal income tax and excess Social Security tax from payments reported on Forms W-2. They also made two estimated tax payments for tax year 2005:  $47,609 on October 20, 2005, and $32,500 on January 19, 2006.  Thus, as of April 17, 2006, Brent and Rebecca Laidlaw had made total payments of $164,973 for their 2005 income tax liability.  Respondent received Brent and Rebecca Laidlaw's 2005 Form 1040 on October 16, 2006.  The return showed total tax liability of $190,306 and net tax owed of $26,473 (including a $1,140 estimated tax penalty); payment for the latter was submitted with the return.

On November 6, 2006, respondent assessed a $5,699.92 addition to tax under section 6651(a)(1) based on the information reported in Brent and Rebecca Laidlaw's return.  Petitioners did not submit a written request for relief from the addition to tax and on January 22, 2007, paid the full amount assessed.[3]  No Form 843, Claim for Refund, has been filed with respect to this amount.

_____

[3]Mr. Morgan claims to have made one telephone call to the IRS practitioner hotline and one to the Taxpayer Advocate in an attempt to challenge this addition to tax.  He does not have any written record corroborating those calls, nor does he remember the names of individuals with whom he spoke or the date of the calls.

[*9] V.     Notices of Deficiency

Respondent on February 2, 2012, mailed to Jarold and Diane Laidlaw and to Brent and Rebecca Laidlaw notices of deficiency for their respective tax years 2005, 2006, and 2007, showing the deficiencies, additions to tax, and accuracy-related penalties listed above. The last day to file a petition with this Court for each petitioner was May 2, 2012. The Court received both petitions on May 4, 2012, but because they were mailed on April 30, 2012, and bore corresponding postmarks, they are treated as timely filed. See sec. 7502(a).

VI.    The Parties' Concessions

With respect to Jarold and Diane Laidlaw, respondent in the notice of deficiency made adjustments to "Other Income" of $183,884 for tax year 2005, $346,900 for tax year 2006, and $402,682 for tax year 2007; there were additional correlative adjustments for those years due to itemized deduction phase-outs. The parties agree that the adjustments instead should be $197,713 (an increase under section 6214(a)), $84,138, and $110,714, respectively. The parties also agree that Jarold and Diane Laidlaw are liable for accuracy-related penalties under section 6662(a) for tax years 2005 and 2006 and under section 6662A for tax year 2007.

With respect to Brent and Rebecca Laidlaw, respondent in the notice of deficiency made adjustments to "Other Income" of $270,190 for tax year 2005,

**[*10]** $370,621 for tax year 2006, and $469,745 for tax year 2007; there were

additional correlative adjustments for those years due to itemized deduction phase-

outs. The parties agree that the adjustments instead should be $249,346, $95,162,

and $117,038, respectively. The parties also agree that Brent and Rebecca

Laidlaw are liable for accuracy-related penalties under section 6662(a) for tax

years 2005 and 2006 and under section 6662A for tax year 2007.

## Discussion

I.      Overview

Individual income tax returns generally are due on April 15 of the year

following the tax year to which the return relates. Sec. 6072(a). However, when

April 15 falls on a Saturday, Sunday, or "legal holiday" as defined in section 7503,

the due date is postponed until the next succeeding day which is not a Saturday,

Sunday, or legal holiday. Sec. 7503; see also sec. 1.6072-1(d), Income Tax Regs.

Taxpayers may be granted a "reasonable extension of time" for filing their returns.

Sec. 6081(a). Section 1.6081-4T, Temporary Income Tax Regs., 70 Fed. Reg.

67359 (Nov. 7, 2005), applicable to extension requests filed after December 31,

2005, and through November 4, 2008, provides individuals with an automatic six-

month extension, provided that the taxpayer (1) submits a complete application on

Form 4868, (2) files the application by the date prescribed for filing the return

**[*11]** with the IRS office designated in the application instructions, and (3) shows the full amount properly estimated as tax for the taxable year.

Section 6651(a)(1) imposes an addition to tax for failure to file a required return on the date prescribed therefor, as extended, unless such failure was due to reasonable cause and not willful neglect. "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Absent reasonable cause, the addition to tax is calculated at 5% of the amount required to be shown as tax on the untimely return, multiplied by the number of months during which the failure to file continues, capped at 25% in the aggregate. Sec. 6651(a)(1).

The parties agree that the due date for 2005 individual Federal income tax returns was April 17, 2006. And they do not dispute that respondent received petitioners' 2005 Forms 1040 on October 16, 2006, which would have been timely if automatic extension requests had been filed. Petitioners claim that they timely applied for automatic extensions by depositing the applications in the U.S. mail on April 17, 2006. Respondent claims that he never received them and thus that petitioners' returns were filed late. Petitioners make no reasonable-cause

[*12] argument, so the remaining question is narrow: Did petitioners timely request extensions of time to file their returns? We find that they did not.

II.     Burden of Proof

Respondent asserts that he has carried his burden of production with respect to the additions to tax. See sec. 7491(c). We agree. Respondent has presented account transcripts showing (1) that he has no record of petitioners' having requested extensions of time to file their 2005 tax returns and (2) that petitioners filed their returns on October 16, 2006, after the April 17, 2006, due date. Thus, respondent has come forward with sufficient evidence indicating that it is appropriate to impose the section 6651(a)(1) additions to tax. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent having met his burden of production, petitioners now must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect. Id. at 447.

III.    The Parties' Arguments

        A.      Timely Mailing

Respondent asserts that a Form 4868 is not filed until it is delivered and received at the appropriate IRS location. See Kearney v. Commissioner, T.C. Memo. 2013-206, at *5 (quoting Spanner v. Commissioner, T.C. Memo. 1988-435, 56 T.C.M. (CCH) 150, 152 (1988)). The Court of Appeals for the Ninth

**[\*13]** Circuit, to which these cases are appealable, has established that under the common law mailbox rule a proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee. See Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992). However, while this Court has allowed taxpayers to use credible testimony to prove the mailing of a document, see Estate of Wood v. Commissioner, 92 T.C. 793, 796 (1989) (accepting as sufficient a postmistress' testimony that she affixed the postmark to a mailing), aff'd, 909 F.2d 1155 (8th Cir. 1990), respondent argues that generally some proof is required that the return was placed in an envelope, properly addressed, stamped, and mailed, Kearney v. Commissioner, at \*6 (citing Fabian v. Commissioner, T.C. Memo. 1994-487, 1994 WL 540673, at \*4).

Respondent maintains, first, that petitioners do not have proof of mailing or a copy of the envelope in which the extension requests purportedly were mailed and, second, that he has introduced account transcripts rebutting any presumption that he received the Forms 4868. Petitioners' case relies on the testimony of their tax preparer, Mr. Morgan. Respondent does not believe Mr. Morgan to be credible because (1) the reliability of Mr. Morgan's recollections about mailing an envelope over a decade ago is dubious, (2) Mr. Morgan had many clients, (3) Mr. Morgan's billing records indicate that he began work on petitioners' extension

**[\*14]** requests and tax estimates on the day of the filing deadline, and (4) Mr. Morgan failed to verify that the envelope ostensibly containing petitioners' Forms 4868 had proper postage. Respondent further contends that petitioners' timely filing of their extension requests and tax returns in prior years does not prove timely filing for tax year 2005. See id.

Petitioners, however, hold fast to their tax preparer's assertion that he mailed the Forms 4868 at the post office to the correct address with the proper postage affixed to the envelope. They contend that it is conceivable for the post office to lose items and for IRS employees to lose incoming mail or for respondent's account transcripts to not reflect all items received. They also dispute respondent's characterization of Mr. Morgan's credibility, which, they assert, is bolstered by his firm's records. Petitioners were important clients of Mr. Morgan, and, they claim, he is more likely to remember mailing their Forms 4868, especially since this matter remained fresh in Mr. Morgan's mind because of his clients' audit by respondent and their subsequent Tax Court litigation.

Petitioners look to Anderson, 966 F.2d at 491-492, for the proposition that proof of a document's timely mailing can be met by extrinsic evidence, including credible statements, in which case the burden shifts to the Government to show that the document was not timely received. In Anderson, the taxpayer provided a

**[\*15]** notarized statement attesting to her mailing of a required return, and the taxpayer's friend testified that she saw the taxpayer bring an envelope containing the return into the post office and return to her car without it.  Petitioners claim that Mr. Morgan's testimony that he personally mailed petitioners' Forms 4868 on April 17, 2006, is sufficient to comply with the mailbox rule.  They assert that the then-proper amount of postage for first class mail comported with Mr. Morgan's testimony and that, even if insufficient postage were affixed to the envelope, the post office would have delivered the envelope with postage due or returned it to sender, which did not happen here.

Petitioners also rely on Lewis v. United States, 144 F.3d 1220 (9th Cir. 1998), where the taxpayers testified that they mailed their application for an extension of time on April 15, 1993.  The document was received by the IRS on April 26, 1993, and subsequently treated as untimely filed.  However, the IRS was unable to produce the envelope (and thus the postmark proving timely mailing) in which the request had been mailed.  Petitioners emphasize that the Court of Appeals for the Ninth Circuit in Lewis accepted the taxpayers' request for an extension of time to file as timely on the basis of the taxpayers' sworn deposition, their unblemished record of paying their taxes owed, and evidence that income tax checks were mailed to the State of California by the extended due date.  The latter

**[*16]** point was relevant because Federal income tax is usually calculated before computing State income tax. Petitioners seek to draw a parallel between <u>Lewis</u> and their cases, arguing that petitioners' tax preparer testified to the timeliness of their extension requests and that the State of California received a timely filed State income tax return extension request with payment of State income tax.

Respondent distinguishes <u>Anderson</u> and <u>Lewis</u> by claiming that those taxpayers presented corroborating evidence in addition to their self-serving testimony, and this evidence was judged credible by the trial courts. Respondent further distinguishes <u>Lewis</u> by pointing out that the copies of the California extension request forms and checks presented by petitioners are meaningless without Mr. Morgan's testimony that the forms and checks were timely sent to and received by the State of California. Respondent also distinguishes <u>Lewis</u> by the fact that there the IRS had received the request for extension of time and deemed it late, whereas here respondent never received the request. In short, respondent asserts that absent any extrinsic evidence corroborating timely filing, Mr. Morgan's testimony stands alone, and no rebuttable presumption of timely mailing exists.

Respondent further emphasizes that where a taxpayer proves proper mailing and the Commissioner proves nonreceipt of a document lost in transit, this Court

**[\*17]** in <u>Smith v. Commissioner</u>, T.C. Memo. 1994-270, 1994 WL 252881, at \*3 (following <u>Walden v. Commissioner</u>, 90 T.C. 947, 951-952 (1988)), <u>aff'd without published opinion</u>, 81 F.3d 170 (9th Cir. 1996), held that it is the taxpayer who bears the risk of nondelivery.  Respondent points out that his records establish that he did not receive petitioners' Forms 4868 for tax year 2005, and thus the risk of nondelivery should fall upon petitioners.

  B. "First Time Abate" Policy

  Petitioners argue that the addition to tax assessed against Jarold and Diane Laidlaw should have been waived by respondent under his "First Time Abate" policy described in Internal Revenue Manual (IRM) pt. 20.1.1.3.6.1 (Aug. 5, 2014), which offers an administrative waiver of an addition to tax under section 6651(a)(1), provided that the taxpayer has no penalties for the preceding three years and has filed all currently required returns and paid any tax due.

  Respondent retorts that petitioners offer no authority for this argument aside from an IRM provision that, respondent claims, is not applicable in this case for several reasons:  (1) there has been no assessment, so there can be no abatement; (2) petitioners have not requested any abatements, nor has respondent denied any; (3) the first-time abatement procedures are a form of administrative, not judicial,

**[\*18]** relief; and (4) petitioners offer no standard of review by which this Court could consider their position.

C.     Failure To Reasonably Estimate Tax Liability

Alternatively, respondent maintains that even if the Court finds petitioners' 2005 Forms 4868 to have been timely filed, those forms are invalid because petitioners did not make a bona fide and reasonable estimate of their tax liabilities or attempt to secure the information necessary therefor. Section 1.6081-4T(b)(4), Temporary Income Tax Regs., 70 Fed. Reg. 67359 (Nov. 7, 2005), requires that an application for extension of time show "the full amount properly estimated as tax for the taxable year." However, as respondent points out, this Court in Crocker v. Commissioner, 92 T.C. 899, 908 (1989), held that if the tax liability is estimated to be zero and a taxpayer had at the time he submitted his request ample evidence discrediting the estimate, then the Form 4868 is invalid. The taxpayer also must make a bona fide and reasonable attempt to find, gather, and consult information enabling him to make a proper estimate of his tax liability. Id. Respondent argues that Mr. Morgan had all the information he needed to estimate petitioners' tax, save for their Schedules K-1, but entered perfunctory zero amounts for petitioners' estimated tax liabilities. Thus, the automatic extension requests, inasmuch as they were filed timely, according to respondent ought to be voided and cannot

**[*19]** constitute reasonable cause for petitioners' failure to file their returns timely. See id. at 913.

Petitioners contend that the Court should reject this theory. It is well settled in Tax Court jurisprudence, they argue, that an argument raised for the first time on brief is not allowed, particularly where it would deprive a party of the opportunity to present evidence, such as questioning Mr. Morgan about why he filled out the Forms 4868 as he did. See, e.g., Suriel v. Commissioner, 141 T.C. 507, 532 (2013) (citing DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992)). Moreover, petitioners assert, even if the argument were allowed, Mr. Morgan had estimated that no tax would be due because of petitioners' participation in the Sterling Benefit Plan. In fact, they state, Jarold and Diane Laidlaw's Form 1040 reflected a refund due of $10,221, and Brent and Rebecca Laidlaw's Form 1040 reflected tax due of only $26,473, representing 3% of their gross income for the year. Crocker does not apply, they maintain, because Mr. Morgan, as an experienced accountant, reasonably estimated that petitioners' balance of tax due would be zero; thus at least a minimal effort was undertaken to consult or secure the information necessary to make a bona fide and reasonable estimate of their tax due. Cf. Crocker v. Commissioner, 92 T.C. at 909-910.

**[*20]** IV.    Petitioners' Request for an Extension of Time To File

As we noted earlier, respondent has met his burden of production by coming forward with sufficient evidence indicating that it is appropriate to impose the section 6651(a)(1) addition to tax.  See Higbee v. Commissioner, 116 T.C. at 446. Thus it falls upon petitioners to come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect.  We hold that petitioners have failed to do so.

Both sides have mustered exhaustive arguments about whether petitioners timely requested extensions of time to file their 2005 Federal income tax returns. But the matter comes down to a judgment of credibility.  Petitioners assert that their tax preparer mailed their Forms 4868 in a single envelope on April 17, 2006. However, there is no copy of this envelope in the record.  And the envelope, if indeed it was mailed, was not sent by certified mail, and there is no trackable record of mailing or delivery.  Therefore, in the absence of any corroborating evidence, the entirety of petitioners' cases rests upon the testimony of Mr. Morgan.

In evaluating extrinsic evidence to establish a document's timely mailing where the only proof thereof is a witness' testimony, the Court of Appeals for the Ninth Circuit instructs us that the witness' credibility is key.  Anderson, 966 F.2d

**[*21]** at 492. We ascertain credibility by observing the witness' candor, sincerity, and demeanor during his testimony. See, e.g., Gerdau Macsteel, Inc. v. Commissioner, 139 T.C. 67, 155 (2012). However, because the parties submitted this case under Rule 122, we had no opportunity to observe Mr. Morgan's credibility as a witness. The reliability of a witness' testimony hinges on his credibility. We were not provided a full opportunity--so critical to our being able to find the witness reliable--to evaluate Mr. Morgan's credibility on the issue of timely filing because petitioners never offered his live testimony in a trial setting. Instead, petitioners merely offered to the Court a transcript of the witness' deposition. While we can learn much from reading the testimony, it is not the same as a firsthand observation of the witness' demeanor and sincerity, both essential aspects of credibility and reliability.

Moreover, we have reservations about the content of Mr. Morgan's testimony. While petitioners claim that Mr. Morgan's recollections have remained fresh because petitioners are significant clients who have undergone an audit and undertaken litigation in this Court, respondent casts doubt on whether Mr. Morgan could remember specific details of mundane events that transpired over a decade ago. Mr. Morgan has many clients and prepares between 215 and 250 income tax returns annually, in addition to filing between 75 and 100 extension requests.

[*22] Multiple filing deadlines have passed since April 17, 2006, and we agree that it is incredible that Mr. Morgan would specifically remember filing petitioners' extension requests on that busy day. Indeed, he admitted in his deposition that he did not recall the days on which he filed Jarold and Diane Laidlaw's 2004 and 2006 extension requests, nor the days on which he filed Brent and Rebecca Laidlaw's 2004 and 2006 tax returns.

To be sure, we are not impugning Mr. Morgan's integrity or honor. Perhaps his recollection is better than we surmise. However, we are unable to evaluate this because the parties decided to take Mr. Morgan's deposition and submit this case under Rule 122, thereby not giving us the opportunity to observe his testimony and judge it accordingly. This problem is further compounded by the fact that Mr. Morgan is not a disinterested witness. Cf. Davis v. Commissioner, 88 T.C. 122, 141 (1987) ("However, we are not bound to accept the self-serving testimony of an interested witness."), aff'd, 866 F.2d 852 (6th Cir. 1989); Brown v. Commissioner, 54 T.C. 1475, 1488 (1970) ("[W]e did not find petitioner's self-serving testimony or that of his lawyer convincing [.]"), aff'd, 448 F.2d 514 (10th Cir. 1971). His timeliness in mailing necessary documents reflects upon his accountancy practice and affects his professional relationship with his clients. While self-serving testimony is not invariably untrustworthy, a contrary

**[\*23]** determination requires that we find the witness credible and forthright, cf. Herman v. Commissioner, 84 T.C. 120, 136 (1985) ("Though such testimony is arguably self-serving, we found the witnesses credible and forthright and accept their testimony on its face."), something that we cannot do here--again, because of the parties' decision to submit this case under Rule 122. The burden of proof falls upon petitioners, and this is a burden not satisfied by the testimony of a tax preparer whose credibility is at best a toss-up.

We also do not think that petitioners' reliance on Lewis rescues their case. In Lewis, unlike here, the IRS received the mailed document but claimed that it was not timely mailed in the face of strong circumstantial evidence to the contrary. The Court of Appeals for the Ninth Circuit also was troubled by the Government's conduct, which included stonewalling the taxpayers for over a year and failing to preserve the postmarked envelope in which the document was mailed. This failure was held against the Government because it had control over that vital evidence and destroyed it, resulting in an adverse inference being drawn against it. Lewis, 144 F.3d at 1222-1223. Here, petitioners have made no allegation, nor could they reasonably do so on the basis of the record, that respondent failed to act appropriately. Nor can anything dispositive be inferred from the copies provided to the Court of petitioners' California extension requests and accompanying

**[*24]** checks dated April 17, 2006, made out to the Franchise Tax Board. Petitioners have offered no proof besides Mr. Morgan's testimony of when these documents may have been mailed. And they offered no proof whatsoever of when the documents were received by the State of California or when the checks were deposited. It is not clear what happened to petitioners' Forms 4868--if they were even mailed. But by not mailing the documents registered or certified, petitioners assumed the risk of nondelivery. See, e.g., Walden v. Commissioner, 90 T.C. at 952.

Further, we agree with respondent that petitioners' argument that Jarold and Diane Laidlaw should be entitled to benefit from respondent's "First Time Abate" policy has no merit. This policy, appearing in the IRM, is a form of administrative relief. Its location at IRM pt. 20.1.1.3.6.1 places it under the "Reasonable Cause Assistant" category in IRM pt. 20.1.1.3.6, which refers to a tool used by the IRS to consider reasonable cause penalty relief. As we noted above, petitioners have not argued reasonable cause. Moreover, since there is no evidence that petitioners have requested any abatement or that respondent has denied such, we find no basis upon which to entertain petitioners' argument.

Because we find that petitioners did not timely file their Forms 4868 and are responsible for the section 6651(a)(1) additions to tax, we need not reach the

**[*25]** argument about the forms' validity and whether they were completed properly.

V.     Conclusion

Respondent has carried his burden of production as to the section 6651(a)(1) additions to tax in these cases, but petitioners have not sustained their burden of proof to persuade the Court that respondent's determination is incorrect. We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing and the parties' concessions,

Decisions will be entered under

Rule 155.